# UNITED STATES DISTRICT COURT
## FOR THE
## DISTRICT OF MASSACHUSETTS

FILED
IN CLERK'S OFFICE

2024 OCT 11  PM 12: 05

U.S. DISTRICT COURT
DISTRICT OF MASS.

| | |
|---|---|
| DUSTY BUTTON AND MITCHELL TAYLOR BUTTON <br><br> PLAINTIFFS, <br><br> V. <br><br> MAURA MELCHER <br><br> DEFENDANT. | Case No: <br><br><br> **COMPLAINT AND DEMAND FOR JURY TRIAL** |

Plaintiffs Dusty Button and Mitchell Taylor Button, (together, "Plaintiffs") file this Complaint and sue Defendant Maura Melcher and allege as follows:

## NATURE OF THE ACTION

1. This is an action arising from an attorney who has abused her power *for years* to **intentionally** commit *egregious* acts of fraud against Plaintiffs Dusty and Taylor Button by way of lying to the Court while entirely disregarding the ethical obligations she took an oath to uphold.

2. Attorney and Defendant, Maura Melcher, colluded and conspired with her clients, her clients' parents, various third-parties and now, attorneys from Boies Schiller Flexner LLC to conceal and aid in fraudulent behavior which has destroyed two innocent lives.

3. This action is about attorney misconduct, and fraud on the Court, as the Defendant provided the foundation for further fraud that has destroyed, (and continues to destroy), the careers and livelihoods of Plaintiffs for *nearly a decade*; by **knowingly** aiding and abetting fraud and committing fraud herself.

4. More specifically, (as set forth herein), this case is about the perpetrator and Defendant Maura Melcher, who exploited her position of power and influence as an attorney, to aid her client in committing fraud on the Court while concealing the evidence which proved her statements to the Court to be fraudulent as she brazenly lied to the Court to assure the careers, businesses, reputations and well-known and respected good names of the Plaintiffs in this case were *entirely decimated.*

5. Maura Melcher's lies to the Court and unethical violations in aiding and abetting her client led to the *complete destruction* of Plaintiffs' lives, as those very same lies secured the granting of permanent abuse prevention orders for her client Sage Humphries against the Plaintiffs, under false pretenses; and later allowed Sage Humphries to *strategically* publish her false and fraudulent allegations on the world stage *prior* to Plaintiffs ever learning that they were being sued in a separate forum, four years after Sage Humphries was granted abuse prevention orders against the Plaintiffs due to fraud on the Court[1].

---

[1] On July 28th, 2021, the New York Times published interviews with Sigrid McCawley and her clients, including false and defamatory statements about Plaintiffs - https://www.nytimes.com/2021/07/29/arts/dance/mitchell-button-dusty-button-abuse.html . Plaintiffs received an email via discovery in the Nevada litigation proving Sigrid McCawley and PR Team member Dawn Schneider arranged an interview with Julia Jacobs of the New

COMPLAINT AND DEMAND FOR JURY TRIAL

6. Maura Melcher has committed criminal acts and conspired for *over seven years* with her clients, various third-parties and other attorneys against Plaintiffs; forging documents, falsifying records and lying to law enforcement.

7. This case is about an attorney who *knowingly* violated the model rules of professional conduct by making *knowingly false statements* in Court **for years** and fraudulently concealing documents which would have otherwise proven her statements to the Court and her clients' fraudulent allegations against the Plaintiffs to be perjury.

8. This is not a case of Plaintiffs "disagreeing" or "disapproving" of the Defendant's false statements to the Court; this case is an example of someone abusing their law degree and their power as a way to create a false narrative and aid their client in a scheme which would lay grounds for more fraudulent actions to later occur.

9. Indeed, the Defendant personally architected and orchestrated the narrative of her clients' case *to secure* knowingly false abuse prevention orders against the Plaintiffs.

10. Ms. Melcher's unethical tactics have provided the grounds in which her client has been able to harass the Defendants for *over seven years.*

11. This case is about the Defendant's intentional infliction of harm against Plaintiffs including by ensuring the Court would never see the fraud which was committed so many years ago.

---

York Times which took place on July 26th, 2021. The New York Times article was published on the same day the complaint was filed, July 28th, 2021, and prior to Mr. Button ever being served or having knowledge of the complaint. Additionally, as discussed further herein, to no coincidence; Plaintiffs contacted Julia Jacobs in 2023 addressing the defamatory article, were referred to her attorney David McCraw who then deferred Plaintiffs to a different attorney who replaced his representation of Julia Jacobs which was none other than Demetri Blaisdell, former associate of Boies Schiller Flexner LLP, who threatened Plaintiffs once learning Plaintiffs intended to sue The New York Times and Julia Jacobs for defamation. Further, when Ms. McCawley's client, Sage Humphries was deposed and questioned regarding the New York Times article being published prior to Mr. Button being served, she stated, "We wanted to release the story alongside the complaint […]" verifying that Ms. McCawley unethically played to the media and the press by arranging and requesting interviews for her clients. Plaintiffs have now filed a law suit against the New York Times and others including Maura Melcher's clients' other attorneys in Nevada, in the Southern District Court of New York – 1:24-cv-05888-MKV.

COMPLAINT AND DEMAND FOR JURY TRIAL

12. As detailed and proven further herein, Ms. Melcher was in possession of **all information** which proved her clients' narrative was constructed of perjured statements, forged documents and false allegations but instead of seeking the truth and warning her client of perjury, Ms. Melcher aided and abetted her client and her clients' parents and various third-parties by lying to law enforcement and to the Court to ensure the truth would never see the light of day.

13. Ms. Melcher *knew* that her statements were false but misled the Court to believe Plaintiffs had committed a multitude of heinous crimes and were continuing, thus rendering them *criminals* and eliminating any fair due process for Plaintiffs before they even stepped foot in the Court room; by implying false facts which were not formed as an opinion and resulting in unsubstantiated claims to the Court to hide the truth for nearly a decade.

## THE PARTIES

14. Plaintiff Dusty Button is an individual who resides and is domiciled in Myrtle Beach, South Carolina. Ms. Button is the wife of Plaintiff Mitchell Taylor Button ("Taylor Button", "Taylor").

15. Plaintiff Mitchell Taylor Button is an individual who resides and is domiciled in Myrtle Beach, South Carolina. Mr. Button is the husband of Plaintiff Dusty Button ("Dusty").

16. Upon belief, Defendant Maura Melcher is an individual who resides and is domiciled in Massachusetts and is an attorney in Rockwell, MA.

17. At the time of the events described herein, (upon belief), Maura Melcher was an attorney for Kostas and Melcher LLC which is now dissolved.

## JURISDICTION AND VENUE

18. Plaintiffs are citizens of the State of South Carolina for purposes of diversity jurisdiction under 28 U.S.C § 1332.

19. Upon belief, Defendant is a citizen of the state of Massachusetts for purposes of diversity jurisdiction under 28 U.S.C. § 1332.

20. Venue is proper in this Court pursuant to Title 18 U.S.C. §§ 1391(b)(1) and (b)(2). The Defendant resides and is subject to personal jurisdiction in Massachusetts.

21. Venue is proper in this district pursuant to 28 U.S.C. § 1391(b)(2) and (b)(3) because a substantial part of the events or omissions giving rise to Plaintiffs' claims occurred in this district by virtue of the fraud on the Court committed in this district (and elsewhere) and also because Defendant is subject to this Court's personal jurisdiction with respect to this action.

22. This Court has original subject matter jurisdiction with respect to this action pursuant to 28 U.S.C. § 1332 as there exists complete diversity of citizenship between Plaintiffs and Defendant and the amount in controversy exceeds seventy-five thousand dollars ($75,000.00), exclusive of interests and costs.

## FACTUAL BACKGROUND

23. Plaintiff Dusty Button was a *world-renowned* ballet dancer who trained at the Jacqueline Kennedy Onassis School at the American Ballet Theatre in New York City. In 2007, she joined the Royal Ballet School in London and in 2008 she joined Birmingham Royal Ballet in England.

24. In 2011, Ms. Button danced with American Ballet Theatre.

25. Ms. Button is best known for her work with the Boston Ballet, which she joined in 2012 and was promoted to their highest position of principal ballerina in 2014.

26. Ms. Button was Red Bull's first and only ballet athlete and has been published in media publications across the globe and has positively influenced hundreds of thousands of people nationally and internationally, including by performing and teaching in over thirty different countries and across the United States.

27. Plaintiff Dusty Button's Instagram account, @dusty_button, at the time of the events described herein, amassed nearly half a million followers and subscribers which generated a great deal of revenue for the Plaintiff.

28. Ms. Button deleted her account in 2021 after succumbing to trauma from severe cyber bullying and harassment which Plaintiff endured as a direct result of Maura Melcher's fraud on the Court.

29. Plaintiff Mitchell Taylor Button, (Taylor Button), was one of the world's *most influential* custom Ferrari and military vehicle designers and builders for seven years, approximately from 2014 – 2021, with his work having been published in media publications across the globe for his automotive design, builds and work in the industry.

30. Plaintiff has positively influenced hundreds of thousands of people nationally and internationally and has been procured from global organizations for speaking engagements and commissions that continue to live on with his legacy today despite the destruction of his life's work as a result of the Defendants' fraud.

31. Plaintiff Taylor Button's Instagram account, @button_built, at the time of the events described herein, amassed nearly half of a million followers and subscribers which generated a great deal of revenue for the Plaintiff.

32. Mr. Button deleted his account in 2021 after succumbing to the severe cyber bullying and harassment which Plaintiff endured as a direct result of Maura Melcher's fraud on the Court.

33. Plaintiffs' names and likeness *was* their business and generated one hundred percent of their yearly revenue whereas, Plaintiffs, themselves and what they provided to their respective industries was *solely* based on what they provided as their name brands, known as Dusty Button, Taylor Button, Mitch/Mitchell Button, Mitchell Taylor Button, "The Buttons", Button Built, Button Brand, Bravado by Dusty Button, Meisturwerk and Meisturwerk Machinen.

34. Plaintiffs' established businesses, goods and services were directly sourced and provided from their good names, talent, expertise, reputations, skills, manufacturing and marketing capabilities, which were **completely destroyed** by the Defendants' fraudulent actions, misconduct and her abuse of power and influence as an attorney.

35. Upon belief, Maura Melcher is a licensed attorney in the State of Massachusetts.

36. Maura Melcher is a well-known member of the Massachusetts Bar Association.

37. Plaintiffs have suffered *unimaginable* loss to their businesses, careers, reputations, finances, mental health, and overall livelihood and will continue to suffer as a direct and proximate result of Defendant's conduct for the rest of their lives.

7

38. Plaintiffs are currently on government assisted programs in South Carolina, such as SNAP for food and Medicaid as a direct and proximate result of Maura Melcher's actions, fraud and misconduct.

39. Plaintiffs have *no income* and are unable to generate *any income* as a direct result of Defendant's fraud on the Court which resulted in fraudulent abuse prevention orders being granted and made permanent against them in 2018, which is now being used to commit further fraud in a separate forum since 2021.

40. Maura Melcher **intentionally, willfully** and **maliciously destroyed** Plaintiffs' livelihoods, business and future ability to generate work or income in both of their respective industries for the foreseeable future, as their names, likeness and reputations were their business but were completely and entirely *obliterated* as a direct result of Maura Melcher's lies to the Court and concealed evidence proving she was committing fraud herself, and aiding her clients to gain an advantage.

## **STATEMENT OF FACTS**

### *A.  Sage Humphries' Relationship with Plaintiffs*

41. In 2012, Plaintiffs moved to Massachusetts as Dusty Button became a company member of the Boston Ballet.

42. In 2014, Dusty was promoted to Boston Ballet's highest position in the company as Principal ballerina.

43. In December of 2016, Sage Humphries, (who was also a member of Boston Ballet), introduced herself to Dusty and stated that she and her mother followed both Plaintiffs on Instagram, that her mother wanted her to meet, and be friends with Plaintiffs.

COMPLAINT AND DEMAND FOR JURY TRIAL

44. In February of 2017, Sage Humphries told Plaintiffs her boyfriend at the time, Anthony Giovanni Deane was forty-years old and that her mother did not approve of her relationship with him because of their age difference.

45. Later in February of 2017, Sage Humphries began spending more time with Plaintiffs at their home and at places her mother encouraged, such as dinners and events with Plaintiffs including events with Red Bull and other various companies where her mother and father saw opportunity.

46. After spending more time with Plaintiffs, Sage Humphries told Plaintiff Taylor Button, "*I wish Dusty would want to have a threesome*".

47. Days later and following that statement, Plaintiff Sage Humphries initiated the first sexual encounter with Plaintiff Taylor Button by following him to the basement of a Japanese restaurant where Plaintiff when to use the restroom; on his way back from the basement, Sage Humphries passed Plaintiff on the stairs, grabbed his face and kissed him stating, "*I've been wanting to do that for so long, I just couldn't wait any longer*".

48. In the following days, Sage Humphries began spending more time with Plaintiffs, making it a habit of sleeping over at Plaintiffs home and eventually, sleeping in their bed.

49. In March of 2017, Sage Humphries began bringing her belongings daily to Plaintiffs' apartment including but not limited to her clothes, piano, and bongs which she used for marijuana prior to meeting Plaintiffs, as Plaintiffs did not use marijuana or any recreational drugs.

50. In March of 2017, Sage Humphries' mother, (Micah Humphries) initiated a "group text" with the Plaintiffs, and her daughter; messaging Plaintiffs about numerous topics including but not limited to requesting Plaintiffs' help with her management of Sage's career, social media, website, vocal recordings and music videos, stating she wanted her daughter to be as successful as Plaintiffs.

51. In the following days, Micah Humphries invited Plaintiffs to California to celebrate Easter and to celebrate Plaintiff Taylor Button's birthday which is on April 16th.

52. On March 21st, 2017, Micah Humphries sent a flight itinerary for Sage, and for Plaintiffs, confirming their trip to the Humphries' home in California on the weekend of April 14th – 17th, 2017.

53. On or around April 1st, 2017, Micah Humphries called her daughter, Sage, as she was furious that she had not yet returned her iPhone in the mail pending an upgrade, resulting in Micah Humphries' account being charged $1100.00 due to the late fee incurred; Sage panicked and stated to Plaintiffs she desperately **needed** to upload all of her photos in order to erase her phone before sending it back to the service provider and requested to upload her camera roll from her phone onto Plaintiffs' hard drive to save all of her photos prior to returning it; Plaintiffs' obliged and Sage uploaded her photos in order to prevent losing her camera roll.

54. Plaintiffs later mailed Sage's iPhone back for her via USPS, on request and called the service provider to receive a full refund for Micah Humphries, easing her frustration with her daughter.

55. In the following days, Micah Humphries requested to Plaintiffs that Sage become a part of Plaintiffs' iCloud family plan in order to avoid issues with Sage and her brother

Michael, who were arguing over iTunes when trying to play music at the same time; Plaintiffs obliged and added Sage to their iCloud family plan.

56. On April 14th, 2017, Plaintiffs and Sage Humphries arrived in California and went to dinner with the Humphries' family where Micah and Michael Humphries ordered drinks for everyone, including their daughter, Sage, who was not yet twenty-one.

57. On the night of April 15th, rather than sleeping at Sage Humphries' parents' house for the second night, Sage insisted the they all go to her parents' "beach house", which doubled as a "law office" for her father, (who is an attorney), Michael Humphries.

58. Micah and Michael Humphries had stocked the fridge inside with alcohol for everyone including their daughter.

59. Sage stated to Plaintiffs that she had a "surprise" for Taylor's birthday, whereas, she initiated the first three-way sexual and emotional encounter that evening as a proverbial "birthday gift" for Plaintiffs Taylor Button and Dusty Button, thus blurring the lines between friendship and relationship.

60. On the morning of April 17th, 2017, Sage's father walked in on the three, nude together in bed, and while making unbroken eye contact simply reminded Sage Humphries of her dentist appointment that morning and left, later directing Plaintiffs where the best coffee place in town was and carried on for the rest of the trip as if nothing happened.

61. Following, Sage sent a message to Plaintiffs stating, "Hey guys, all good?". Plaintiffs replied, "Yea we were going to pick your family up a gift but we talked to your dad and he seemed completely normal so I think it's okay", to which Sage replied, "It's an Easter miracle".

62. Michael and Micah Humphries had *actual knowledge* of Sage Humphries' relations with Plaintiffs, and said nothing until Sage Humphries' views and decisions as an adult began differing from her parents'.

63. Following the intimate relations which took place on April 16th, 2017, Sage Humphries and Plaintiffs decided to continue their relationship, ultimately labeling each other as "boyfriend" and "girlfriend" and spending most of their time together as Sage Humphries asked Plaintiffs if she could continue to stay at their apartment.

64. Following the April trip to California, Micah Humphries initiated another "group text" with her daughter and Plaintiffs which was then regularly used as an open line of communication.

65. Micah Humphries' messages increased, regularly sending Plaintiffs requests for her daughter's career including by asking if Plaintiff Taylor Button could again, help with managing Sage's website, social media and music career, and if he could purchase certain equipment for vocal recordings and photography.

66. Micah Humphries continuously stated that Plaintiffs were the best thing to ever happen to her daughter and thanked them for being such a great influence on her as she could notice a difference in her behavior, confidence and work ethic because of Plaintiffs' influence.

67. There were innumerable occasions where Micah Humphries addressed her gratitude for Plaintiffs being in her daughter's life via the "group text" initiated by Micah Humphries to Plaintiffs and Sage Humphries including but certainly not limited to the following message from Micah on May 9th, 2017:

- *"All three of you have welcomed each other into one another's life with open arms... mike and I feel that you are A huge blessing in each other's life."*

68. Later in May of 2017, Ms. Humphries' parents again, invited Plaintiff Taylor Button to their home on two occasions while he was there for work, in which he obliged.

69. On one such occasions in April when Plaintiff Taylor Button was invited to the Humphries' home, Micah and Michael Humphries shockingly, asked Taylor to help carry Micah's deceased grandmother's body in a plywood box from the back of a pickup truck into their garage, as they did not want to pay for cold storage; Micah then proceeded to video tape the incident from her bra while Taylor, who was on Facetime video with his wife, Dusty and Sage, found it odd and uncomfortable and the rest of the Humphries' family laughed about the incident.

70. At the end of April, 2017, Ms. Humphries' parents made it clear that they knew she was in a dating relationship with both Plaintiffs whereas, at first, Ms. Humphries' parents accepted the relationship by facetiming Plaintiffs and asking if she could move in with them permanently to save money as they knew Sage's desire was to move in with them but wanted to make sure it was okay with Plaintiffs.

71. Sage Humphries' parents also stated they would be storing Sage's furniture so they could use it for her brother, who was attending school in Boston, MA the next year.

72. The following message was sent by Micah Humphries to the "group text":

73. In May of 2017, Micah Humphries visited Plaintiffs' home in Somerville, MA and stayed over for one night during her visit as she asked Plaintiffs if she could stay to avoid paying for a hotel and knew that Sage was staying at Plaintiffs' home the majority of the time.

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

74. During her visit, she made various comments on Plaintiffs' collections of luxury items which were on display in their home including but not limited to their collection of Louis Vuitton bags, bicycles, shoes, furniture and the display of airsoft toy guns which were used as props in multiple marketing and campaign photo shoots for various brands and sponsors of Plaintiffs on social media, **none of which were real firearms**; Micah and Sage Humphries knew this to be true as seen in two of the many photos below:





75. In or around the beginning of May, Micah Humphries reminded Sage to get her passport renewed for a trip to Europe which followed a planned visit to Scotland for a family member's wedding.

76. On May 9th, 2017, Micah Humphries sent a text message on the "group text" stating that it has been a difficult year for their family and that Sage is adding to their difficult year by not being responsible i.e., paying for her own bills, getting her passport on time and stating that the year was already difficult for them because Sage was previously in a relationship with Anthony, who was old enough to be Sage's father and that it took a toll on them.

77. In May of 2017, Sage's parents sent the summer itinerary they planned for her, giving her dates in which she was allowed to make her own plans for the summer on the dates they did not already have booked for her, though she was an adult, whereas; Sage

Humphries made it clear that she already made plans with Plaintiffs to travel to Australia but would adjust her schedule to also fit in what her parents scheduled for her.

- The following text was sent to Plaintiffs and Sage Humphries on a group text from Micah Humphries:



78. Plaintiffs were invited to teach and photograph in Australia in June and July of 2017 as Plaintiff Dusty Button was a scheduled teacher for the International Ballet Workshops which toured Australia for nearly two months.

79. Sage Humphries asked the Plaintiffs if she could assist Dusty in her classes in Australia to make a summer trip out of Plaintiffs already scheduled travels.

80. Sage made the decision to travel to Australia with Plaintiffs, informing her mother, (rather than asking), that she would be traveling with them to Australia and would then visit her family in California and travelling with them to Europe, altering her parents' plan they planned for her.

81. On May 17th, 2017, Micah Humphries texted her daughter with a warning that if she did not end her relationship with Plaintiffs, she would fly to Boston from California with her husband and forcibly remove Sage and "come take her things".

82. Sage ignored her mother's threatening message and instead, continued her relationship with Plaintiffs as she expressed that was her desire.

83. Later that day, Micah Humphries' sent another text message to Sage, this time she was furious, forgetting that Sage previously told her she was going to Australia and stating that a family friend, Dr. Kesten, had informed her that her daughter was going to Australia with Plaintiffs.

84. Following this message, there was a complete and drastic turn of events as Sage Humphries was persistent telling her mother that she wanted to make her own decisions. The following conversation was the result of Sage Humphries telling her mother she wanted to make her own decision regarding her summer plans with Plaintiffs: (These texts are provided in Exhibit A, attached to Plaintiffs' complaint).

- **Micah Humphries to Sage**: "They are not your masters. I don't know what control. I'm pretty sure this is a threesome and I'm completely weirded out by all of it. You've known them 3 months. I love you sage but this situation is destructive to you and not healthy."

- **Sage Humphries responded to her mother**: 1) "Dusty is texting you regarding what you said about her to dr k. 2) you are paranoid and sound crazy regarding this relationship.
- **Micah Humphries replied:** "It is weird Sage".
- **Sage Humphries replied**: 3) "this is my choice".
- **Micah Humphries**: "Sage".
- **Sage Humphries**: "my life my summer".
- **Micah Humphries**: "I love you with all my heart".
- **Sage Humphries**: "Nobody is controlling my life. You are the only person trying to do so".

85. Following the argument between Sage and her mother, it was then made abundantly clear that Micah and Michael Humphries had a new plan to regain the control of their daughter, as Sage was making her own decisions which did not align with their own.

86. Sage Humphries told Plaintiffs that her parents would no longer pay for the renewal of her passport in order to go to Europe because she had made the decision to go to Australia.

87. Sage asked if Plaintiffs would pay for her passport renewal so that she could go to Australia with them and that she would pay them back for the renewal.

88. Plaintiffs immediately went to USPS with Sage and paid to rush her passport renewal for the summer travels.

89. On May 18th, 2017, Micah Humphries sent a text message to the "group text", responding to the earlier conversation:

- *"I talked to Dr k yesterday and told her everything that has Been going on in our family over the past three months with papa, nana and Mike's grandma and I also told her about Anthony. When I found out, from her, that you all had been planning to go to Australia July 16th, instead of sages grandmas funeral, I was upset! You all have known how we feel about this time with us, and how important it is to Mike and his family. Dr Kesten is extremely close to our family. She is our dear friend and she sage doesn't respond to her, she texts me… Anything I have to say to you or Taylor, I will say. I can't be more honest then I have been with you and What we discuss openly is between us. And btw.. Dr Kesten knows Sage smokes weed. She helped her with that when she came back from New York and was a mess!"*

90. On May 21st, 2017, neither Plaintiffs or Sage Humphries heard from her mother Sage's decision to go to Australia with Plaintiffs, which she did not alter following the conversation with her mother.

91. On May 22nd, 2017, to Plaintiffs' shock, Plaintiff Dusty Button's contract with the Boston Ballet was abruptly and prematurely terminated for "just cause", with no explanation as to why she was terminated, banning Dusty and Taylor from the premises of the Boston Ballet and Boston Opera House (now, Citizen's Bank Opera House), where the Boston Ballet performances were held and in fact, would not allow Dusty in either building to collect her belongings.

92. Plaintiff Dusty Button **has never received a reason or cause for her termination from Boston Ballet** nor was a reason named in the official documentation however, Plaintiffs now know, Micah and Michael Humphries conspired with Maura Melcher

and the Boston Ballet to prematurely terminate Dusty Button's very financially lucrative and prestigious contract as explained further herein.

93. On May 24th, 2017, without any prior notice, Sage Humphries' parents sent her a text message that they were in Boston, MA, ordering her to attend dinner and falsifying that Ms. Humphries' grandfather was "dying"; he was not. Later, Sage Humphries' parents admitted they created that lie to entice Sage to come back to California with them.

94. On May 25th, 2017, Sage Humphries went to see a movie with Plaintiff Taylor Button prior to her performance with Boston Ballet as Plaintiff Dusty Button was teaching about forty-five minutes away.

95. Following the movie, Plaintiff Taylor Button walked with Sage Humphries to the Boston Opera House and the two parted ways.

### B. The May 25th Events and the Summer of 2017

96. On May 25th, 2017, after weeks of harassing their daughter regarding the disapproval of the relationship with Plaintiffs, Micah and Michael Humphries took a flight from California to Massachusetts, kidnapped their **adult daughter, (admittedly),** under false pretenses, stole her phone, driver's license and funds from her bank account, forced her onto a plane back to California, into exorcisms, and into therapy because they did not approve of her choice to be in a relationship with Plaintiffs.

- **The following events described herein took place following Sage Humphries being kidnapped by her parents on May 25th, 2017:**

97. On May 25th, 2017, Plaintiff Taylor Button received a text message from Sage Humphries stating:

- *"I'm hysterical. Tony literally escorted me out. I'm getting on a flight"*.

98. Sage Humphries was immediately escorted out of the Opera House by Boston Ballet faculty, Tony Randazzo, and **forcibly removed** by her own parents who were waiting for her at the Opera House.

99. Sage Humphries called Plaintiffs **screaming** for help as she was forced by her parents into a taxi, through TSA at the airport and onto a plane and forced back to Defendants' residence in California to be reset and manipulated by her parents.

100.     Micah and Michael Humphries (**admittedly**) stripped their daughter of her drivers' license, cell phone, car keys and finances to prevent her from leaving their home or contacting Plaintiffs or any other third party for help as they forced her into therapy and exorcisms, which they funded with her own money, stolen from her bank account.

101.     After hearing about what happened, Sage Humphries' best friend, Hannah Stolrow[2] offered to drive to the Humphries' home in Los Alamitos, CA to check on Sage as she too, was concerned.

102.     As stated further herein, and as Plaintiffs discovered through a legally recorded phone call, (with Hannah Stolrow's ex-boyfriend, Bryce Jackson Lee, and through admittance by Sage Humphries' herself through deposition), Ms. Stolrow **never saw Sage Humphries that day** and instead, Micah Humphries intervened and did not allow Sage Humphries to leave the house to see Hannah as she kidnapped, threatened

---

[2] Plaintiffs are suing Hannah Stolrow in the Southern District Court of California for defamation and civil conspiracy amongst other torts in addition to Sage Humphries' parents; case - 8:24-cv-01730-JVS-DFM Dusty Button et al v. Micah Humphries.

and imprisoned her own adult daughter, creating a false narrative which never occurred.

103.     Micah Humphries told Ms. Stolrow that Plaintiffs had drugged her daughter, forced her to be in sexual relations with them, and forced her to live with them, manipulating and lying to Ms. Stolrow, leading her to message Plaintiffs a follow up text that stated she did not the "know the full story".

104.     At the time, Plaintiffs did not understand what Ms. Stolrow was referring to and in fact, did not receive any information until 2023 regarding the conspiracy between the Humphries and Hannah Stolrow, which is now proven through numerous messages and recorded phone calls as they colluded to create and maintain a false narrative of abuse by Plaintiffs **that never existed**.

105.     Plaintiffs were never aware that Ms. Stolrow spoke to Micah Humphries or what was said to Ms. Stolrow until 2023 when Plaintiffs received discovery material showing the text messages between Hannah Stolrow and Micah Humphries; and through deposition testimony of Sage Humphries.

106.     Plaintiffs never heard from Ms. Stolrow again following her text message, (after her visit to the Humphries' California home in May).

107.     As stated herein, Defendant and attorney, Maura Melcher, was in possession of all documents prior to her representation of Sage Humphries at the August, 2017 hearing at the Boston Municipal Court.

108.     Maura Melcher knew that Sage Humphries' parents created a false narrative and knew that Plaintiffs had never abused Sage Humphries.

109.    Maura Melcher had a duty to her client to prevent her from committing fraud on the Court and from perjuring herself but instead, Ms. Melcher colluded with the Humphries' family to create and sustain a false narrative of abuse which never existed.

110.    Upon belief, Ms. Melcher conspired with Judge Robert McKenna of the Boston Municipal Court in 2017 and again, in 2018 to guarantee a result for her client.

111.    Ms. Melcher even filed false police reports with her client in 2017 and 2018 to ensure her client received an abuse prevention order against the Plaintiffs which was later made permanent based on those false police reports.

112.    As stated, *supra*, it was **years later** that Plaintiffs were made aware of and *actually discovered* the fraudulent scheme Defendant Maura Melcher intentionally participated in by colluding and conspiring with her client, her clients' parents and later, attorneys from Boies Schiller Flexner LLP.

113.    Ms. Melcher has destroyed two innocent lives by providing her client with confidence after fraudulently obtaining the document which is the sole catalyst of the events which have taken place for over seven years.

### C.  The Aftermath of the May 25th, 2017 Events

114.    On May 27th, 2017, Sage Humphries' parents sent a text message to Plaintiffs as seen below:

COMPLAINT AND DEMAND FOR JURY TRIAL

115.     At the time the above text message was sent, Micah and Michael Humphries

had not yet filed any police report with any department of law enforcement, (as seen

on the time stamped data of the reports provided), however, the text message which

states they "*notified the Boston police*" and "*local authorities here in Orange County*",

was a precursor of their fraudulent and criminal actions to come, just one day later as

they filed their first series of false police reports against Plaintiffs.

116.     On May 28th, 2017, Michael Humphries *knowingly* filed **two false police**

**reports** against Plaintiffs, one with the Orange County Sheriff's Department in

California falsely claiming Plaintiffs had boarded a flight to California and were going

to kidnap his daughter and harm their family and another with the Somerville Police

Department in Massachusetts, falsely stating Plaintiffs had **over fifty automatic**

**weapons, hand grenades and land mines** in their Somerville home, while he illegally used an address of a Somerville resident who was friends with Sage Humphries and who lived in the same apartment complex as Plaintiffs while making the call from California to file the false report.

117.    Both reports were filed consecutively, **within one minute of each other**, as seen below.

118.    The Somerville Police Department raided Plaintiffs home while they were away on a "staycation" to get away from the trauma that had occurred, as Plaintiffs went to stay at a hotel nearby, as they did not want to be at their apartment; Plaintiffs' dog walker at the time let the police into Plaintiffs' apartment.

119.    The raid lasted for five minutes as authorities instantly recognized on inspection that there were **no firearms**, hand grenades or landmines in the Buttons' home; the Somerville Police Department instantly stated in their report that the home was clear, as the claim was false.

- The Buttons were informed the following day by the Somerville Police Department, (Sgt. Devin Schneider), that the phone call was made from Micah Humphries' phone number who utilized Sage Humphries' friends' address, (Dawn Atkins), to falsify the call was coming from someone who had a view of Plaintiffs' apartment through their windows however, that view was blocked by a large cabinet with *no view inside Plaintiffs' apartment*, confirming it could not have possibly been any "neighbor" of Plaintiffs[3].

---

[3] Plaintiffs also received the 911 call associated with the false report in Somerville, MA which was directly linked back to Micah Humphries' phone number and which they intend to produce to the Court.

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

- Below is the report from the raid of Plaintiffs' apartment from the Somerville Police Department, which they did not obtain until 2023.

120.     In California, as shown below, Michael Humphries **knowingly** and **falsely** lied to officers from the Orange County Sheriff's Department who noted on the report:

- "*Spoke with informant who stated daughters ex-boyfriend boarded a flight from boston to his home. Informant believes his daughter is going to be taken from his home and taken back to boston. Spoke with daughter sage who stated there is no validity to the statements made by her father. Sage feels safe and there will be no harm done to her family. sage agreed to travel to sacramento to visit family. no crime committed.*"

- The Orange County Sheriff's Department interviewed S.H away from her father where she stated "*there is no validity to the statements made by her father and she feels safe and that no harm would be done to her family*".

- The report from the Orange County Sheriff's Department can be seen below, falsely filed by Michael Humphries, (Sage's father), on May 28th, 2017 as his daughter attempted to escape her parents' home and imprisonment.

121.    Maura Melcher had this report in her possession at the time of the abuse prevention order hearing in 2017.

122.    Maura Melcher concealed this report from the Court knowing the report contradicted the entirety of her clients' false allegations against the Plaintiffs.

COMPLAINT AND DEMAND FOR JURY TRIAL

123.    The above reports were withheld from the Boston Municipal Court in 2017, 2018 and 2023 by the Defendant, Maura Melcher and her client, Sage Humphries, to *intentionally deceive* the Court into believe allegations stated by Ms. Humphries were true while concealing the reports which stated otherwise.

124.    The reports were later discovered and obtained by Plaintiffs through issued subpoenas to law enforcement which were issued by the Nevada District Court in 2022 and 2023.

125.    Simultaneously, and unbeknownst to Michael and Micah Humphries, Sage was using her parents' phones to message Plaintiffs, which she pursued on her own, begging Plaintiffs for help to, "come save her" and "need help", as seen below:

COMPLAINT AND DEMAND FOR JURY TRIAL



126.    On May 29th, 2017, Plaintiffs received an unwarranted message from Sage

Humphries' father, (an attorney), who discovered his daughter was sending messages

from his phone and his wife's phone, asking Plaintiffs for help.

127.    Michael Humphries falsely stated that Plaintiffs *sent* their daughter's best

friend, Hannah Stolrow to the Humphries' home to "stalk" their home.

128.    Michael Humphries also falsely stated that Plaintiff Dusty Button was fired

from the Birmingham Royal Ballet in England however, Plaintiff Dusty Button

resigned due to various reasons related to job opportunity.

129.    Michael Humphries' statements are the false and defamatory lies that the

Humphries' family and their friends spread to innumerable third parties and the media.



130.     Michael Humphries, **(an attorney)**, threatened Plaintiffs by stating he will

*"expose [Plaintiffs] predatory behavior to ensure there are no other victims, and*

*[they] will prosecute [Plaintiffs] to the full extent of the law"*, using his law degree to

intimidate and harass Plaintiffs.

131.     Maura Melcher was in possession of these text messages prior to the 2017

proceedings at the Boston Municipal Court.

132.     Michael Humphries' text message also tellingly reveals a premediated scheme

against Plaintiffs by stating that their daughter knows **"about ALL"** Plaintiffs

**"previous relationships"**, *conspiring to commit fraud* against Plaintiffs by defaming

them through the media and making false and defamatory statements to innumerable

third parties about presumably negative "previous relationships" alluding to some sort of abuse which he alleged previously took place, (it did not).

133.     From May 25th, 2017 – July 18th, 2017, Sage Humphries continued to pursue Plaintiffs and expressed her desire to continue her relationship with them, using various forms of communication on her own merit including by borrowing strangers' phones, her parents' phones, her therapist's phone, and her younger brother's phone to contact Plaintiffs via Snapchat, (who were in Australia at the time), in order to hide her communication with Plaintiffs from her parents, who continued to keep her phone, driver's license, car keys and funds from her bank account until she agreed to break off her relationship with Plaintiffs.

134.     Maura Melcher had actual knowledge of Sage Humphries' desire to be in a relationship with Plaintiffs.

135.     Maura Melcher had actual knowledge of Sage Humphries' parents' disapproval of their daughter's relationship with Plaintiffs.

136.     Ms. Melcher's client, Sage Humphries, hid her relationship and contact with Plaintiffs from her parents during the summer of 2017.

137.     After May 25th, 2017, the Buttons *never once* initiated contact with Sage Humphries and only ever responded and communicated with Sage when she messaged, as they were still in a relationship and she continuously stated she "needed help".

138.     On June 1st, 2017, Sage Humphries contacted Plaintiffs from a stranger's phone while the Buttons were in the presence of their friend and witness Rich Costa, who heard the entire conversation on speaker phone.

139.     Sage frantically begged Dusty to wait for her and repeated that she loved her, then proceeded to ask if Taylor was there and if she could speak to him. She then repeated the same statements to Taylor and that she had borrowed the phone she was calling on.

140.     Sage Humphries told Plaintiffs to please answer all calls from *any* California number as she will try to get a phone from anyone she can, but that her parents had shut down her bank account, taken her driver's license and ID and her phone, would not allow her to communicate with anyone outside of the home and most disturbingly, they were forcing her to have exorcisms where her priest would pick her up from the house, drive her to have exorcisms performed and then drive her home.

141.     The rushed phone call concluded when Sage begged the Buttons to send the police because she was being held captive against her will by her parents.

142.     Sage Humphries made fun of the therapy sessions her parents forced her into.

143.     In fact, Sage Humphries sent numerous messages and photos to Plaintiffs showing she did not want or need the therapy that her parents were forcing her into as seen in the photos below:



144.     Maura Melcher was in possession of the photos above prior to the proceedings
at the Boston Municipal Court in 2017.

145.     Maura Melcher had *actual knowledge* that Sage Humphries did not want or
need therapy but was being forced into therapy by her parents.

146.     Micah and Michael Humphries stole money from Sage Humphries' bank
account to pay for her therapy that she did not want or need.

147.     Maura had actual knowledge that her clients' parents were stealing money
from their daughter's bank account to pay for the therapy she did not want.

148.     Sage wrote and performed multiple love songs for Dusty and Taylor Button
while she was in California during the months of June and July 2017.

149.     Maura Melcher had actual knowledge of the love songs Sage Humphries wrote
for the Plaintiffs and was in possession of these songs and their lyrics prior to the
Boston proceedings in 2017.

150.     On one such occasion, Defendants Micah and Michael Humphries discovered
that one their daughter's songs were about Plaintiffs and immediately "*took everything
away from her*".

151.     When Micah and Michael Humphries discovered their daughter was still
speaking to the Buttons, they became *enraged* and immediately threatened Sage with
her job at Boston Ballet, telling Sage that if she did not "break up" her relationship
with the Buttons that she would not be allowed to go back to Boston and would not be
released from their custody.

152.     In July of 2017, Ms. Humphries' parents gave her an ultimatum; to either end
her dating relationship with Plaintiffs or she would lose everything she ever loved and

worked for, including that they would not pay for her ticket to go back to Massachusetts to work at the Boston Ballet in August of 2017.

153.    On July 9th, 2017, Sage warned the Buttons that she would be calling to leave a fake voicemail "breaking up" with the Buttons so that she would be allowed to go back to Boston and that they could "be together"; she just needed to "make them think" she was breaking up with them.

154.    Sage Humphries stated to Plaintiffs, "*don't listen to the voicemail*", "*delete it immediately*" and "*don't believe a word I say*".

155.    Sage Humphries warned Plaintiffs through messages of the "fake break up" she would be forced to leave in order to "make her parents believe" she was out of the relationship.

156.    Once the fake "break up" voicemail was left on July 10th, 2017, Sage Humphries continued to message the Buttons through July 18th, 2017.

157.    On July 14th, 2017, Ms. Humphries contacted Plaintiffs and stated her parents were forcing her to see a lawyer, that she got really upset and left and that her parents were forcing her to sign restraining orders against Plaintiffs or they would not give her back her freedom[4].

158.    **That lawyer was Maura Melcher.**

159.    On July 18th, 2017 Sage Humphries sent a final message to Plaintiffs stating "*I want you to know I am no longer your girlfriend, this is over and final*".

---

[4] Sage Humphries has admitted that she did not even write her restraining order, that her father did and that Ms. Humphries only provided a signature as she was forced to do so to regain her freedom. Plaintiffs have filed for fraud on the Court in Boston, Massachusetts and will be presenting Oral Argument for their Appeal 2023-cv-1202 on October 8th, 2024.

160.     Over the course of the summer in 2017, it became clear that Sage Humphries was succumbing to the pressure of Micah and Michael Humphries, and assisting in their calculated scheme against Plaintiffs while simultaneously portraying to Plaintiffs that she was being forced out of the relationship with them that she wanted to be in; as she played both sides, ultimately deciding the Buttons' lives and reputations were worth destroying by agreeing to and consenting to her parents' fraudulent narrative of sexual assault and abuse that never existed in the time of her relationship with Dusty and Taylor in order to save herself, the relationship with her family and to secure her release back to her privileged life in Boston, MA.

161.     Maura Melcher had actual knowledge of the events which took place prior to Sage Humphries first speaking with her in the summer of 2017.

162.     Maura Melcher knew that Sage Humphries' parents were forcing her, (as an adult), to see her and that Sage Humphries was "upset" and did not want a lawyer at all but was forced to create a narrative against the Plaintiffs in order to regain her freedom.

163.     Maura Melcher knowingly concealed and aided the fraudulent narrative that was created, and brought forth by the Humphries; later withholding imperative information and documents which proved that narrative to be false in its entirety.

164.     Four days later, on July 22nd, 2017, Sage Humphries and Defendants Micah and Michael Humphries *intentionally* and *knowingly* filed a false police report with the Orange County Sheriff's Department in California against Plaintiffs, reporting sexual assault and threats to do bodily harm, contradicting her initial statement in her father's false report on May 28th, 2017.

165.    Officers interviewed Sage Humphries privately, away from her parents

viewing any and all messages between Sage Humphries and Plaintiffs on her phone

and the report concluded that the allegations were unfounded based on the interview,

the messages between Sage and Plaintiffs and the prior statements made to law

enforcement by Sage Humphries and her parents were unfounded.

166.    The officer who arrived at the Humphries' home noted they had previously

been called to her parents' home on numerous occasions for the same matter whereas,

every report was unfounded as shown below:

167.     This specific report *was intentionally withheld* by Sage Humphries, her parents and her attorney, Maura Melcher, in 2017, 2018 and 2023 and was not obtained by Plaintiffs until 2023 when they subpoenaed the Orange County Sheriff's Department.

168.     Maura Melcher was in possession of this report prior to the proceedings at the Boston Municipal Court in 2017; as explained further herein, Ms. Melcher "did not find it necessary" to show the report to the Court during the proceedings though it was requested.

169.     On August 14th, 2017, *the night before* Sage Humphries' abuse prevention order hearing, the Humphries filed *another* false police report, this time with the Boston Police Department against Plaintiffs, stating the same false and fraudulent allegations within that report, (which the Orange County Sheriff's Department already found to be inconsistent and resulting in an unfounded report) whereas; the Humphries' *intentionally* filed this report to state they "filed" a report but never showed the contents of that report with the Court, Plaintiffs, or any other entity which would have seen that the Humphries' perjury to law enforcement pursuant to Maura Melcher's advice.

170.     Plaintiffs have had no choice but to diligently investigate and obtain documents themselves, which were not "publicly" available due to the "nature" of the reports and the (false) allegations within them; this is just one reason Plaintiffs have been unable to seek legal recourse against Defendants Micah and Michael Humphries as they knew Plaintiffs would not be able to retrieve the documents which proved they had never done any wrong to their daughter but instead, were falsely and fraudulently accused.

171.     Micah and Michael Humphries intentionally withheld these police reports for *over seven years* including in 2017, to ensure their daughter obtained an abuse prevention order against Plaintiffs under false pretenses, as the abuse prevention order was the sole catalyst for the fraud they committed and the criminal acts which they would continue to commit against Plaintiffs for **years to come** including until this very day.

172.     On August 1st, 2017, after succumbing to her parents' plan, Sage Humphries filed for an emergency abuse prevention order against Plaintiffs in Massachusetts.

173.     The abuse prevention order is provided below whereas; the Court should note that the statements on the abuse prevention order are inconsistent with the lies stated to the police including but not limited to:

1) The report to the police in Somerville, MA previously stated that Plaintiffs had over thirty automatic weapons, hand grenades and landmines in their apartment. Not only was this false but the report itself, provided supra, proves the allegations to be false and therefore, the Humphries not only fraudulently stated, (even after the unfounded report was provided to them on May 28th, 2017), that Plaintiffs owned firearms but exaggerated the number of weapons owned even after law enforcement stated there were no firearms at all, noted as "*has over fifty guns at home*".

2) Sage Humphries states in section I that Plaintiffs **did not cause her to engage in sexual relations by force, threat or while under duress** which directly opposes her false police reports and the reports filed by Micah and Michael Humphries and later, Sage Humphries' Nevada complaint alleging she was

raped, which is not only egregiously false but entirely contradicting to the

abuse prevention order which claims she was not forced, threatened or under

duress.



174.     As just one example of the testimony provided by Sage Humphries in 2017

during the Boston Municipal Court hearing, she states just one reason she committed

fraud.

175.     Sage Humphries 2017 testimony excerpt at the Boston Municipal Court below shows that Sage Humphries made it clear that she ended the relationship because she "didn't know how to, you know, handle everybody talking to me about the relationship, not approving of the relationship"; not because she alleged she was "abused", (she was not).

```
                                                          1-20

1   BY MR. MAHONEY:
2   Q.   When you wrote the next line, They want to
3   take everything away from me, what were you
4   referring to?
5   A.   I was referring to my, you know, supposed
6   relationship with them, but that was it.
7   Q.   And you wrote, I am distraught.
8        What did you mean by that?
9   A.   I'm -- I was distraught because I was kind of
10  in a rock and a hard place.
11       I didn't know how to get out of the
12  relationship.
13       I also didn't know how to, you know,
14  handle everybody talking to me about the
15  relationship, not approving of the relationship.
16       It was -- I was in a distraught scenario
17  where a lot of pressure was put on me to make a
18  decision.
19  Q.   Make a decision to do what, Ms. Humphries?
20  A.   To either end the relationship or, you know,
21  continue with it and risk my job, family,
22  friends, everything that I ever knew.
23  Q.   So on July 7th, would it be fair to say
24  that you had not made a decision yet as to
25  whether or not you were going to end the
```

176.     On August 14th, 2017 Sage Humphries was granted a one-year extension for

her abuse prevention order for one year based on fraudulent allegations, perjured

testimony and her father's abuse of power as an attorney as he fraudulently forged

documents and presented those documents to the Court.

### D.  Maura Melcher's Fraud and Misconduct Committed in 2017

177.     On August 15th, 2017, Maura Melcher represented her client, (Sage

Humphries), for the first time at the Boston Municipal Court, (who sought abuse

prevention orders against the Plaintiffs.

178.     Both Taylor and Dusty Button were represented by counsel, Kevin Mahoney.

179.     The Docket numbers for the case were 1701RO181 and 1701RO182; now

located in the Massachusetts Appeals Court as a consolidated case, 1701RO182.

180.     Plaintiffs brought *over three hundred exhibits* which were organized in

chronological order, along with over 8GBs of data on five thumb drives and provided

the organized files to Maura Melcher, the parents of Sage Humphries and the Court

however; suspiciously, the Court **never looked at one piece of evidence** provided by

Plaintiffs against Sage Humphries and her parents.

181.     Counsel for the Plaintiffs attempted to file the exhibits into the record but

Judge McKenna of the Boston Municipal Court denied the exhibits and did not look at

one singular exhibit for the entirety of the hearing, (as seen in the record).

182.     As previously stated, from April 16th, 2017 until July 18th, 2017, Plaintiffs

were in a consensual open dating relationship with Sage Humphries, (who was nearly

twenty years old). Ultimately, Sage Humphries' parents did not approve of their

daughter's relationship with Taylor and Dusty or their adult daughter's choice to be in that relationship.

183.     Maura Melcher knew that Sage Humphries, her client, was in a consensual, open dating relationship with the Plaintiffs and knew that she was never abused.

184.     The exhibits provided by Dusty and Taylor Button contradicted *every* false statement made by Sage Humphries, her parents and her attorney and proved that entirety of her testimony was perjury.

185.     Maura Melcher was in possession of the evidence which contradicted her clients' statements but Maura Melcher intentionally neglected that evidence and instead, made false statements to the Court by colluding with her client and her client's parents to mislead the Court into believing the testimony of her client rather than the evidence provided which proved her client was lying.

186.     As stated further herein, Maura Melcher made *egregious* false statements to the Court including that Plaintiffs drugged her client, that she was underage, forced to be in a relationship, was threatened with firearms and knives and was stalked by the Plaintiffs, none of which were true and were proven to be false by the evidence in her possession.

187.     At the 2017 hearing at the Boston Municipal Court, Ms. Melcher even stated, "MS. MELCHER: *I just wanted to add that there was -- when Ms. Humphries finally broke this relationship off -- and she's not denying that she was in the relationship, and I know my Brother will perhaps say that she said she loved them and whatever, all the things that would go on in a relationship went on in a relationship. But when Ms. Humphries – "*

188.      Maura Melcher was in possession of multiple false police reports that her client filed against the Plaintiffs during the 2017 hearing but intentionally withheld them from the Court so the Court would not see that the reports entirely contradicted her clients' statements; the withholding was for the sole purpose of concealing her clients' perjury and by withholding those documents and reports it allowed Sage Humphries to make fraudulent statements in Court as the reports; leading the Court to "fully credit" her testimony *without ever viewing* or requesting to view the reports which would have *entirely changed the result of the hearing*.

189.      The aforementioned police reports were never provided to the Plaintiffs and therefore, Plaintiffs had no idea what the reports entailed prior to the years 2022 and 2023.

190.      As just one example of Maura Melcher's fraud, she falsely stated to the Court that Taylor and Dusty told Sage Humphries to "*delete her messages on snapchat*"; and that was the reason there were no negative or "bad" messages to her client Sage Humphries, while simultaneously proceeding to state that "*snapchat is an app that deletes messages after you send them and that is why [Sage] used it*" and having in her possession, a chain of text messages from Sage Humphries to Plaintiffs, ending with a text telling Plaintiffs to delete Snapchat messages and voicemails she would be sending them to convince her parents she was ending the relationship with Plaintiffs.

- The Snapchat message chain from Sage Humphries to the Plaintiffs on July 10th, 2017 is below:





COMPLAINT AND DEMAND FOR JURY TRIAL





COMPLAINT AND DEMAND FOR JURY TRIAL





COMPLAINT AND DEMAND FOR JURY TRIAL





COMPLAINT AND DEMAND FOR JURY TRIAL





COMPLAINT AND DEMAND FOR JURY TRIAL





1

2

3

4

5

6

7

8

9

10

11

12



13

191.     Maura Melcher intentionally lied to the Court to validate her clients' false

14

allegation while knowing that statement was entirely false and possessing the

15

forementioned text messages.

16

192.     Snapchat deletes messages unless you intentionally save them, which Plaintiffs

17

did.

18

19

193.     Sage Humphries also falsely stated that Plaintiffs were in possession of over

20

fifty automatic weapons, after the Somerville Police Department raided and cleared

21

the apartment and noting that the allegations were unfounded.

22

194.     Maura Melcher was in possession of the Somerville Police Department report

23

proving the allegations of any firearms in Plaintiffs' possession or ownership was

24

entirely false and unfounded but continued to submit and produce a fraudulent

25

statement that Plaintiffs had over fifty automatic weapons, (they did not); this was a

26

27

28

clear misrepresentation to the Court to gain an advantage, particularly give the subject-matter.

195.     As a direct result of Ms. Humphries' perjured statement and Maura Melcher's aid in committing fraud by making false statements to the Court, the Court credited Ms. Humphries' statement over the evidence, because they neglected to view the evidence as a direct result of Maura Melcher's perjured statements.

196.     As a direct result of Maura Melcher's lies to the Court, the Court threatened Plaintiffs by stating he would be recommending the District Attorney "look into the matter", while neglecting to look at any evidence or exhibits provided by Taylor and Dusty, which verified that Sage Humphries' testimony in its entirety was fraudulent.

197.     Maura Melcher's actions were the leading cause in the Court believing a false narrative of abuse which never existed, as she allowed her client to perjure herself.

198.     Maura Melcher knew that her client was lying as she had every message between Sage Humphries and the Plaintiffs in her possession.

199.     In fact, it was her client who told the Plaintiffs to delete messages so that her parents would not discover she was speaking to the Plaintiffs as she pursued them for the entirety of the summer in 2017.

200.     Aside from the witnessed testimony and perjury at the 2017 hearing, the fraud committed by Maura Melcher and her client was undiscovered for *seven years*, until discovery in a separate litigation began, (allowing for subpoenas to be issued), which was initiated by Sage Humphries and until Sage Humphries' admitted this fraud herself during deposition testimony on August 23rd, 2023.

201.     As previously stated, Sage Humphries' abuse prevention order **was not signed by a witness** as required for a 209A; Maura Melcher is the responsible party.

202.     As previously stated, Sage Humphries' abuse prevention order "*was not her handwriting*".

203.     Sage Humphries' father forced her to sign the restraining orders that he had drafted himself; Maura Melcher knew that Sage's father forged these documents.

204.     Maura Melcher communicated with Sage Humphries' parents on numerous occasions via email and in person, though Sage Humphries was an adult; thereby destroying the attorney-client privilege.

205.     Sage Humphries did not want to file abuse prevention orders against the Plaintiffs but was forced to, in order to return to the Boston Ballet; Maura Melcher had actual knowledge that Sage Humphries had no desire to file the restraining orders.

206.     Maura Melcher had actual knowledge that Sage Humphries did not even write her restraining order against the Plaintiffs and that Sage Humphries' father forged the documents but submitted them anyway.

207.      Sage Humphries' abuse prevention order application stated that Dusty and Taylor Button had **over thirty automatic weapons** in their home *even after* already knowing the Somerville Police Department cleared the home within five minutes as the **allegation was entirely false**; Maura Melcher knew the allegation was false, had the report in her possession but still lied to the Court by stating Plaintiffs had over thirty automatic weapons in their possession and that they threatened her client with them; the Court credited Ms. Melcher's statements.

208.      In addition to the Somerville Police Department report, Ms. Melcher had the receipts in her possession provided by Plaintiffs which showed Plaintiffs were only ever in possession of toy airsoft props which were plastic and used for social media marketing online; Ms. Melcher knew that Plaintiffs never owned firearms.

209.      Ms. Melcher was in possession of her client playing with those toys and still lied to the Court, aiding her client in fraud; the Court credited those statements as it did not view any of the receipts of the toy airsoft props which were purchased while Sage Humphries was in a relationship with Plaintiffs.

210.      The Court and Maura Melcher were presented with numerous receipts of each and every toy prop gun (**none of which were firearms**), but continued to allow her client to perjure herself in 2017, 2018, 2019, 2021 and 2023 by stating that Taylor and Dusty had over thirty automatic weapons, hand grenades and land mines in reports to the police even after the first report found Sage's statements to be false and even after having the receipts of each toy in her possession.

211.      As stated further herein, Maura Melcher continued to lie to the Court in 2023 by stating Plaintiffs were "shooting firearms" inside their apartment in 2017, while knowing that was entirely false and equally impossible.

212.      Maura Melcher lied to the Court even after law enforcement verified that her clients' statements were false.

213.      Sage Humphries' abuse prevention order actually stated that she was **not forced, threatened or under duress** during the time of her relationship with Mitchell and Dusty including that **she was not raped**, as she previously and falsely stated to

law enforcement and on the stand later on March 27th, 2023, at the Boston Municipal Court.

214.     At the end of the Boston Municipal Court proceedings in 2017, Sage Humphries made a specific request regarding the conditions of her abuse prevention order which stated: "*D is to surrender any and all personal information (to the Boston Police Department or in Court), pertaining to P, including electronically stored information and is not to publish such*".

215.     Sage Humphries later admitted that her restraining order was actually to prevent Plaintiffs from "blackmailing" her with information she left on Plaintiffs' hard drive, while she was in a relationship with them, including information which proved through screenshotted photo text messages that she was having inappropriate sexual relations and committing tax fraud with the owner of NHL hockey team, Edmonton Oilers, Daryl Katz.

216.     Maura Melcher knew that her client's restraining order was never to prevent abuse but aided her client to protect the information her client left on Plaintiffs' hard drive by creating a false narrative that Plaintiffs were abusive, to use them as a vessel.

217.     As a direct result of Maura Melcher's misconduct, every statement made by Sage Humphries that day was credited as she misled the Court, lied to the Court and allowed her client to do the same.

218.     Upon belief, Maura Melcher colluded with Judge McKenna prior to the abuse prevention order proceedings on August 15th, 2017, as the temporary abuse prevention orders were granted ex-parte on August 1st, 2017 and the Court refused to view any and all evidence which proved Maura Melcher and her client were lying and the Court

additionally deterred Plaintiffs from testifying that day by threatening and intimidating them into silence.

219.     None of the requirements for a 209A were met that day but the Court made an exception to Maura Melcher and her client, turning a blind eye to any evidence against them, which would have proven they both lied to the Court and to law enforcement.

220.     At the end of the proceedings, the Court even stated:

> THE COURT: "*I'm satisfied, **not by a preponderance of the evidence**, I'm satisfied beyond a reasonable doubt, if this were a criminal case, that the facts demonstrate that the parties engaged in an emotionally charged and unconventional relationship that, over time, became one in which the defendants became the dominant and controlling participants. It was a relationship that, once again, over time, morphed into one of fear, isolation, and abuse of the plaintiff. Abuse that in every regard, in every way, meets the requirements of and the definition of abuse in General Laws Chapter 209A of our state, as required for a 209A.*"[5]

221.     Judge McKenna was *intentionally led astray* as Maura Melcher and her client lied to the Court and falsified documents, which are both criminal actions.

222.     Maura Melcher disregarded all ethical obligations as she allowed her client to commit fraud on the Court, knowing the entirety of her clients' narrative, (which she aided), was false and proven to be false by irrefutable evidence yet, continued to assist

---

[5] Mass. R. Evid. 1106 - Abuse prevention orders pursuant to Chapter 209A **require** plaintiffs to show by a **preponderance of the evidence** that they have been subject to abuse. *Frizado v. Frizado, 420 Mass. 592, 597 (1995).*

her client in committing that fraud to ensure her abuse prevention orders were granted against Taylor and Dusty Button.

223.      Mitchell and Dusty have spoken on numerous occasions, on their own merit, to the Assistant District Attorney in Somerville, MA including as recent as October of 2023 and again in September of 2024 to begin the process in filing charges against Sage Humphries for filing false police reports against them.

224.      Following the 2017 Boston Municipal Court proceedings, Sage Humphries was GRANTED a one-year abuse prevention order in 2017 against both Dusty and Taylor Button as a direct and proximate result of Maura Melcher's misconduct, fraud, lies, misrepresentations to the Court and upon belief, collusion with the Court.

225.      In September of 2017, Dusty and Taylor moved to Los Angeles, CA as they had business opportunity with Red Bull in California and wanted to be as far away as they could from Sage Humphries who lived in Massachusetts to work at the Boston Ballet.

226.      Maura Melcher is the *direct cause* of the fraud which has been committed against Dusty and Taylor Button **for over seven years.**

227.      Sage Humphries was deposed on August 23rd, 2023 where she admitted to an abundance of fraud including that *she did not even write her restraining order.*

228.      Maura Melcher made numerous *intentionally false statements* to the Court, (as seen in transcripts), to benefit her client and to assure the false narrative created by the Humphries family would be affirmed by the Court.

### E.  *Maura Melcher's Misconduct in 2018*

229.     Following the August 15th, 2017, Boston Municipal Court proceedings, Plaintiffs never spoke to or saw Sage Humphries again.

230.     In the time that the first proceedings took place, until the second proceedings took place on August 14th, 2018, Sage Humphries, her parents and her attorney committed further fraud by filing two more false police reports, and filing false allegations with the District Attorney of Somerville, (who Plaintiffs have since been in contact with the discuss the fraud).

231.     On June 11th, 2018 Sage Humphries filed a fifth false police report against Taylor and Dusty with the Melrose Police Department in Massachusetts, intentionally and falsely stating that they were "stalking" her and alleging they sent a third-party "personal assistant" to get her address in order to stalk her in Massachusetts.

232.     Plaintiffs have since spoken to that third-party who verified Sage Humphries' lies.

233.     Maura Melcher knew that her client was lying, knew that Plaintiffs did not have a personal assistant and shockingly, aided in filing the false report with her at the Melrose Police Department.

234.     Sage Humphries and Maura Melcher made the false statements to the police and stated to the Officer that it was a violation of the abuse prevention order.

235.     The Officer who took the report at the Melrose Police Department stated there was **no violation** to the abuse prevention order.

236.     Plaintiffs were **never aware** of this occurrence.

237.     *Even after* Officers confirmed there was no violation, Sage Humphries used these false allegations to state to the Court on August 14th, 2018, (during the

proceedings to make her abuse prevention order permanent), that Taylor and Dusty had violated the abuse prevention order, (they did not).

238.     On August 13th, 2018, (again, *just one day prior* to Sage Humphries' abuse prevention order renewal hearing), she filed a ***sixth false police report*** with the Melrose Police Department, intentionally and falsely stating that Taylor was selling illegal firearms in California.

239.     Sage Humphries and Maura Melcher stated that they just "wanted the matter on record".

240.     This was in preparation for her hearing the next day as it would allow her to state the allegations, she filed in her report without providing any proof of such an allegation, which did not exist as Mitchell was not selling illegal firearms in California or anywhere else for that matter.

241.     On August 14th, 2018, Sage Humphries appeared with her attorney, Maura Melcher at the Boston Municipal Court.

242.     Sage Humphries did not testify but Maura Melcher committed fraud on the Court and lied under oath by making false statements that Plaintiffs violated the abuse prevention orders after Officers already stated they did not.

243.     Plaintiffs *had no knowledge* of these reports or false statements to the police until 2022 and 2023; and further, were never aware of the false and fraudulent statements made to the Court.

244.     Taylor and Dusty were not present for the renewal hearing as they were not made aware of the abuse prevention order renewal hearing.

245.    Counsel did not appear on behalf of Taylor and Dusty as there was no notification sent to counsel or to the Plaintiffs for the renewal hearing.

246.    Maura Melcher took advantage of the ex-parte hearing where only she and her client appeared.

247.    Neither counsel nor the Plaintiffs were aware of the renewal hearing, and they lived on the opposite coast in California; they were equally unaware of the false police reports which had been filed against them in 2018 until 2022 and 2023 when they subpoenaed the police departments for documents.

248.    Maura Melcher lied to the Court when she stated Sage Humphries was underage when she was in a relationship with the Plaintiffs knowing that statement was false, in order to mislead the Court.

249.    Maura Melcher lied and stated Plaintiffs were stalking her client *after knowing* that was a false statement in order to persuade the Court to believe otherwise.

250.    Sage Humphries has since admitted Plaintiffs did not have a personal assistant and that Plaintiffs were not stalking her.

251.    In fact, Sage Humphries has since admitted to *stalking Plaintiffs*, by eating at an Indian restaurant inside Plaintiffs' apartment building in Los Angeles after a permanent restraining order was issued in 2018.

252.    In fact, Sage Humphries lied and stated she saw the Plaintiffs when she ate at the Indian restaurant, stated that she had a panic attack and that her boyfriend had to take her to her parents' home in Orange County, CA.

253.     (Provably), Plaintiffs were not even in Los Angeles when Sage Humphries stated she saw, them; she never saw them in Los Angeles and in fact, stalked the Plaintiffs.

254.     Maura Melcher knew her client stalked the Plaintiffs and instead, stated that Plaintiffs were the ones who stalked her clients.

255.     Amongst other lies, Maura Melcher stated that Taylor and Dusty "fed her [client] drugs" while they were in their "thirties", none of which were true statements and all of which **were intentionally false** to mislead the Court.

256.     Suspiciously, Judge McKenna, (who was already retired), was suspiciously the Judge who appeared one year later on August 14th, 2018, again presiding over Sage Humphries' abuse prevention order but this time, for the renewal hearing.

257.     Sage Humphries' affidavit was not signed in 2018.

258.     Sage Humphries' affidavit was not witnessed in 2018.

259.     At the 2018 hearing, as a direct a proximate result of Maura Melcher's misconduct, Judge McKenna of the Boston Municipal Court required no evidence of the statements made in Court by Maura Melcher and Sage Humphries and instead, stated that "in his humble opinion", Taylor and Dusty violated the abuse prevention order as he took Maura Melcher's word as true.

260.     Maura Melcher had evidence in her possession that her statements were entirely false.

261.     Maura Melcher knew that she was lying to the Court.

262.     Due to Ms. Melcher's fraud and perjured statements, the Court was led to make the following statements, as the actual police reports filed by Sage Humphries, her parents and Maura Melcher were withheld to the Court.

263.     Maura Melcher had evidence in her possession proving that there was no violation of the abuse prevention orders.

> THE COURT:" And the other matter's – so we are clear on the record, obviously, the first of the two, in my opinion, is a violation of the order. The second, also, in my humble opinion, is also a violation of the order." This statement was a direct result of Maura Melcher's fraudulent and perjured statements and her withholding of the actual police reports which in no way reflected the statements she made to the Court and in fact, contradicted her statements to the Court; proving she committed fraud on the Court intentionally and while Mitchell and Dusty were not even present, nor was their counsel, at the hearing to object to the misleading and fraudulent statements made about them.

264.     Judge McKenna also stated at the hearing,

> "THE COURT: Some -- some days I don't remember what I had for breakfast, but this one I remember."

265.     Judge McKenna did not base his decision that day on the "preponderance of the evidence" as required for a 209A but instead, credited the perjured testimony and false statements of Maura Melcher.

266.     The Court held an ex-parte hearing, allowed Sage Humphries and her attorney, Maura Melcher, to make false allegations with **no evidence** of the allegations made.

267.     Plaintiffs were denied due process, the right to be heard and a meaningful opportunity to challenge the false allegations brought forth by Maura Melcher that day.

268.     Taylor and Dusty did not have counsel appear, did not appear themselves, and were not notified of the hearing.

269.     Maura Melcher never notified the Plaintiffs or sent a copy of Sage Humphries, (unsigned) 2018 affidavit, as required.

270.     Plaintiffs had **no idea** what was said at the hearing, including the false allegations of stalking and selling of illegal firearms in California.

271.     Plaintiffs were denied the opportunity to prove fraud on the Court by Sage Humphries and Maura Melcher that day.

272.     The Court denied Taylor and Dusty their constitutional rights as a direct and proximate result of Maura Melcher's lies to the Court.

273.     Upon belief, Maura Melcher colluded with Judge McKenna from the Boston Municipal Court.

274.     Maura Melcher knowingly and intentionally took advantage of an ex-parte hearing to lie to the Court as Plaintiffs could not defend themselves.

275.     On August 14th, 2018, the abuse prevention orders were made permanent as a direct and proximate result of Maura Melcher's lies to the Court.

276.     Plaintiffs were never made aware of the ex-parte hearing or the result of that hearing, where the abuse prevention orders were made permanent until they were served with the order in California, later in 2018.

277.     As a direct and proximate result of Maura Melcher's perjury to the Court, permanent abuse prevention orders were granted based on fraud.

### F.  The 2021 Nevada District Court Matters

278.     On July 28th, 2021, after four years of no contact with Maura Melcher's client, Sage Humphries, (Plaintiffs ex-girlfriend) filed a **frivolous** and **malicious** civil complaint against Plaintiff in this case, Taylor Button[6], naming Dusty Button as a co-conspirator.

279.     Sage Humphries filed this complaint together with Gina Menichino, (former dancer at Centerstage Dance Academy in Florida where Plaintiff Taylor Button taught contemporary dance from approximately 2007-2010).

280.     Plaintiffs discovered through the headlining front-page publishing of The New York Times[7] that this complaint was filed, *prior* to Plaintiff Taylor Button *even being served*[8] or a summons being issued.

281.     Maura Melcher colluded with Sage Humphries' attorneys from Boies Schiller Flexner to file the false and frivolous lawsuit.

282.     The allegations brought forth by Sage Humphries and Gina Menichino are **false in their entirety**, for the purposes of this litigation; Sage Humphries' allegations

---

[6] See Nevada District Court Case: 2:21-cv-01412-ART-EJY
[7] Plaintiffs have filed a lawsuit in the Southern District Court of New York against The New York Times Company – see case 1:24-cv-5888-UA which includes claims against the attorneys of Sage Humphries for colluding with the media amongst other claims.
[8] https://www.nytimes.com/2021/07/29/arts/dance/mitchell-button-dusty-button-abuse.html - New York Times article published on July 29th, 2021 prior to Taylor Button ever being served with the complaint.

are vastly different from her claims made in Massachusetts in 2017 and 2018

including that Sage Humphries waived all monetary damages both years of her abuse

prevention order and yet, sued the Plaintiffs for nearly twenty-million dollars in 2021;

and Sage Humphries stated in Nevada that she was raped while in Massachusetts she

stated she was never forced, threatened or under duress at any point during her

relationship with the Plaintiffs.

283.    On September 23rd, 2021, Plaintiffs were met with an amended complaint in

Nevada which included (false) allegations from Plaintiff Taylor Button's ex-girlfriend

Danielle Gutierrez and Rosemarie DeAngelo, (another woman from the same dance

studio in 2009), and **a woman they have never met**, (known in the Nevada litigation

as), Jane Doe 1[9], who Maura Melcher claims privilege with as an attorney.

284.    As explained further herein, Maura Melcher provided Sage Humphries'

affidavits to Jane Doe 1 as her allegations are plagiarized versions of allegations which

Sage Humphries stated however, Jane Doe 1 has never met the Plaintiffs and is

entirely delusional and mentally unwell as explained further herein.

285.    After two years, Jane Doe 1was deposed by the Plaintiffs in Nevada.

286.    In October of 2023, Plaintiffs subpoenaed Maura Melcher for documents

regarding Sage Humphries, her parents and Jane Doe 1, (a woman which Plaintiffs

have never met before in their lives, but who falsely alleges she was raped one

---

[9] Sigrid McCawley originally filed Jane Doe 1 as Jane Doe 100 in order to lead the public to believe there were hundreds of victims, sensationalizing the complaint for the media. On February 2nd, 2023, the Court ordered Ms. McCawley to refer to Jane Doe 100 as Jane Doe 1. Jane Doe 1 also has a granted Court Order to proceed under a pseudonym whereas, Plaintiffs still refer to her as Jane Doe 1 in this complaint - Nevada District Court case – 2:21-cv-01412-ART-EJY, ECF No. 39 – Order GRANTING leave to proceed anonymously.

singular time, possibly in 2014, in a building that did not exist, with firearms that Plaintiffs did not own).

287.     Jane Doe 1's allegations are nearly identical to those of Maura Melcher's client, Sage Humphries.

288.     Though both parties' allegations are false in their entirety, Jane Doe 1 has never met the Plaintiffs.

289.     Suspiciously, in response to the request for documents from Maura Melcher, the attorneys from Boies Schiller Flexner filed a Motion to Quash the subpoena sent to Maura Melcher claiming attorney-client privilege.

290.     Plaintiffs expected the argument of attorney-client privilege between Sage Humphries or her parents and Maura Melcher though they knew Sage Humphries' parents forced her to see Maura Melcher and after a privilege log was produced which verified the communications between Ms. Melcher and Sage Humphries' parents, Plaintiffs confirmed the attorney-client privilege was broke.

291.     What Plaintiffs did not expect was that Maura Melcher suddenly claimed privilege with Jane Doe 1, **(a woman that Plaintiffs have never met).**

292.     Through discovery, Plaintiffs discovered that Jane Doe 1 stalked the Plaintiffs including at performances of Dusty Button's at the Boston Ballet, stalked Taylor Button on Instagram, worked at the same hair salon which sponsored Sage Humphries in Boston, MA and had a best friend who attended Boston Ballet School at the time Dusty Button was a principal dancer and who was also friends with Sage Humphries years prior to Sage Humphries meeting the Plaintiffs.

293.        Jane Doe 1's allegations mimic portions of Sage Humphries' 2017 and 2018

affidavits from her abuse prevention order which were only in the possession of Maura

Melcher, Sage Humphries, Sage Humphries' parents, the Court and the Plaintiffs.

294.        Maura Melcher, shockingly, claimed privilege with Jane Doe 1 in her Motion

to Quash in Nevada.

295.        The Court, (under false pretenses and due to Plaintiffs "pro se" status), took the

word of attorneys at Boies Schiller Flexner, and quashed the subpoena.

296.        Maura Melcher gave Jane Doe 1 a copy of Sage Humphries' affidavits from

the 2017 and 2018 Boston Municipal Court proceedings.

297.        Upon belief, Maura Melcher knew that Jane Doe 1 had never met the Plaintiffs

but conspired with the Humphries to aid Jane Doe 1 in filing a near-identical

complaint against them in Nevada.

298.        Maura Melcher has never represented Jane Doe 1

299.        Maura Melcher does not have privilege with Jane Doe 1

300.        Maura Melcher has lied to a separate Court by stating she has attorney-client

privilege with Jane Doe 1

301.        Maura Melcher does not have privilege with Micah or Micheal Humphries

302.        Maura Melcher has never represented Micah or Michael Humphries

303.        Maura Melcher conspired with Micah and Michael Humphries knowing that

304.        Defendant conspired with Sage Humphries to commit fraud prior to filing her

complaint and her continuance in actually committing that fraud which she is

continuing today.

305.     Defendant conspired with Jane Doe 1 to commit fraud prior to filing her complaint and her continuance in actually committing that fraud which she is continuing today.

306.     Defendant took active steps in aiding and abetting Sage Humphries in contribution to her success in defrauding the Court.

307.     Defendant took active steps in aiding and abetting Jane Doe 1 in contribution to her success in defrauding the Court.

308.     Defendant provided Jane Doe 1 with Court documents from 2017 and 2018 to aid Jane Doe 1 in committing criminal acts.

309.     Defendant lied to law enforcement to create a false and defamatory narrative against Plaintiffs on at least three different occasions that Plaintiffs are aware of.

310.     Defendant is equitably estopped from asserting a statute of limitations defense as to Plaintiffs' claims.

311.     Allowing Defendant to do so would be **unjust**.

312.     Defendant took active steps to prevent the Buttons from commencing this lawsuit before now, including by withholding imperative documents which were Court ordered and requested via subpoena, concealing evidence of fraud, aiding and abetting fraud, failing to perform duties which would have protected and warned Plaintiffs of the harm intended against them and ultimately resulting in the false allegations, defamatory remarks and media posts which defamed the good names of Plaintiffs in their respective industries whereas, if it were not for Defendants' actions and/or lack thereof, Sage Humphries would have been prevented from causing the severe harm to Plaintiffs, who lost everything due to the false and heinous allegations and who have

been in pending litigation with Sage Humphries for over seven years, but prevented

from seeking recourse against the Defendants in this litigation until now as a direct

and proximate result of her misconduct.

313.     Plaintiffs continue to suffer mental anguish, severe emotional distress,

complete loss of income, damage to their reputations and careers and the inability to

generate any income as a direct and proximate result of Defendants' egregious

conduct including that they are still involved in pending litigation with Sage

Humphries as of the date and time of this complaint being filed.

### G.  The 2023 Boston Municipal Court Matters

314.     In January of 2023, Plaintiffs filed a Motion to Vacate the abuse prevention

orders previously granted by the Boston Municipal Court based upon the fraud, which

Plaintiffs did not discover until 2022.

315.     In January of 2023, Maura Melcher filed that Plaintiffs were in contempt of

Court, again, and alleging Plaintiffs violated the abuse prevention orders which should

not have been granted in the first place but were granted based upon fraud.

316.     Plaintiffs did not violate the abuse prevention orders.

317.     On February 22nd, 2023, Plaintiffs were heard on their Motion to Vacate and

Maura Melcher was heard regarding the contempt of Court.

318.     Maura Melcher lied to the Court and stated once again, that her client was

"underage" during the relationship with Plaintiffs.

319.     Maura Melcher also lied to the Court by stating that her client's information

from her iPhone was "automatically" uploaded onto the Plaintiffs' hard drive because

"she lived with them"; to which the Court corrected her by stating, "only if you allow it".

320.     Maura Melcher knew that she was lying to the Court but continued to do so in an attempt to prove to the Court that Plaintiffs were in contempt of Court.

321.     Maura Melcher committed multiple fraudulent acts against the Plaintiffs again that day, including that she stated Plaintiffs were "shooting firearms" in their apartment; as one of many false allegations.

322.     Maura Melcher also lied to the Court and stated that Plaintiffs had violated the abuse prevention orders for creating a website and YouTube channel which hosted videos that displayed evidence against her client including text messages and videos proving Sage Humphries' fraud and that her allegations in Massachusetts and Nevada were fraudulent.

323.     The Boston Municipal Cour, (Judge Tracy Lyons), ruled that Plaintiffs were not in contempt of Court after a full hearing.

324.     The Boston Municipal Court, (Judge Tracy Lyons), ruled that Plaintiffs were able to be heard on their motion to vacate the abuse prevention orders after seeing the evidence presented to the Court by the Plaintiffs but were rescheduled for a later date in order to allow Plaintiffs to submit all of their evidence to the Court and to provide it to Ms. Melcher, (who was already in possession of that evidence), prior to the hearing.

325.     Plaintiffs and Maura Melcher were scheduled for a hearing on May 27th, 2023.

326.     Maura Melcher aided Sage Humphries' attorney, (Sabina Mariella, who represented Ms. Humphries in Nevada), and "pawned" off her representation of her

client Sage Humphries to the attorneys in Nevada in order to conceal the fraud committed in Nevada, as the allegations were and are contradicting.

327.    On May 27th, 2023, Sabina Mariella represented Sage Humphries and Maura Melcher turned a blind eye to the fraud she knew was continuing to be committed including because she represented Sage Humphries in 2017 and 2018 and knew that the allegations in Nevada contradicted, (the already false), allegations in Massachusetts from 2017 and 2018.

328.    Maura Melcher **will not stop** in her continuance of harassment against the Plaintiffs, even knowing that her client has perjured herself and committed innumerable acts of fraud.

329.    Maura Melcher has since "pawned" off her representation of her client Sage Humphries to the attorneys in Nevada who represent her there in order to cover the fraud committed in Nevada as the allegations are contradicting.

330.    Maura Melcher has conspired and colluded with attorneys from Boies Schiller Flexner to aid her client, Sage Humphries, in concealing evidence of fraud and to assure the fraud does not see the light of day.

331.    Plaintiffs are scheduled for Oral Argument in the Massachusetts Appeals Court on October 8th, 2024 whereas, Ms. Melcher will not even be present or arguing against the fraud she committed in 2017 and 2018 and instead, counsel for Sage Humphries from Boies Schiller Flexner is to appear; this proves the conspiracy and collusion between Ms. Melcher and attorneys from Boies Schiller Flexner.

332.    Ms. Melcher is continuing to commit fraud.

333.    Ms. Melcher is continuing to conceal that fraud.

334.        Ms. Melcher is the direct and proximate cause of the destruction of the

Plaintiffs' livelihoods, careers, business and reputations as she laid the fraudulent

grounds for which Sage Humphries felt so confident to abuse against the Plaintiffs for

over seven years.

### H. Plaintiffs' Bar Complaints against Maura Melcher and Michael Humphries

335.        On August 26th, 2024 Plaintiffs filed a BAR complaint against Maura Melcher

with the BAR of Overseers in Massachusetts

336.        On August 23rd, 2024, Plaintiffs filed a BAR complaint against Sage

Humphries' father, Michael Humphries.

337.        On September 23rd, 2024, Plaintiffs were contacted by the Massachusetts BAR

of Overseers informing them that they received the complaint against Maura Melcher

and they stated after having reviewed the transcripts from all proceedings where

Maura Melcher represented Sage Humphries in Massachusetts and various other

documents including evidence against Sage Humphries and her parents; and the

proceedings in the Nevada litigation, the BAR counsel verified that the destruction of

Plaintiffs' lives was caused by the fraud on the Court executed by Maura Melcher and

Sage Humphries' father, Michael Humphries.

338.        Plaintiffs continue to be in contact with the Massachusetts BAR of Overseers

regarding their complaint against Maura Melcher.

339.        On October 4th, 2024, Plaintiffs were contacted by the State BAR of

California, regarding their complaint against Sage Humphries' father, (who colluded

with Maura Melcher), by letter which stated:

*"Your complaint against attorney Michael Scott Humphries has been reviewed and forwarded to the Enforcement Unit for further investigation and prosecution."*

340.    The complaints against Ms. Melcher and Mr. Humphries included withheld documents which took Plaintiffs seven years to discover.

341.    Maura Melcher intentionally and willfully violated her ethical obligations to the BAR by committing fraud on the Court, lying to law enforcement and intentionally stating misrepresentations to the Court to gain an advantage in a litigation or proceeding against the Plaintiffs in favor of her client.

342.    Maura Melcher enabled fraud.

343.    Maura Melcher committed fraud on the Court.

344.    The Defendant's actions directly resulted in the destruction of the Plaintiffs entire livelihood, careers, reputations and businesses which they will never recover from.

345.    Maura Melcher's conspired agreements with the Humphries' family enabled Sage Humphries to lay fraudulent grounds in another forum against the Plaintiffs.

346.    Maura Melcher's conspired agreements with Jane Doe 1 enabled Jane Doe 1 to commit fraud on the Court in another forum.

347.    As a direct and proximate result of Maura Melcher's unethical behavior and misconduct, Plaintiffs have been irreparably harmed.

### I.   *The Aftermath of Defendant's Conspiracy, Harassment and Defamation Against Plaintiffs Which is Continuing*

348.    Plaintiffs will **never mentally, spiritually, physically or financially recover** due to Defendant's misconduct which resulted in defamatory, malicious and egregious

false allegations and statements made to law enforcement, the Court, the public, the media, the press, employers, sponsors and innumerable third-parties about Plaintiffs.

349.    Defendant *knew* she was committing acts of fraud against Plaintiffs but committed them anyway.

350.    Defendant *knew* the allegations against the Plaintiffs were false, and had evidence that the allegations were false but chose to commit fraud on the Court anyway.

351.    Defendant *knew* her heinous acts of fraud were false and defamatory including false allegations that Plaintiffs had engaged in criminal activity but committed them anyway.

352.    Maura Melcher intentionally inflicted *severe harm* and trauma upon Plaintiffs, knowing her client was lying to the Court and to law enforcement.

353.    Defendant *knew* the fraud committed, and that it would undoubtedly inflict *severe harm* and trauma upon Plaintiffs whereas, there would be **no recovery** from the false, fraudulent and defamatory statements against the Plaintiffs following the issuance of the abuse prevention orders.

354.    Defendant knew the fraud committed, and that it would undoubtedly inflict severe harm and trauma upon Plaintiffs whereas, there would be no recovery from the issuance of the permanent abuse prevention orders, which entered the Plaintiffs into a database preventing them from certain work.

355.    Defendant knew the issuance of abuse prevention orders would cripple Plaintiffs' employment ability.

356.    Micah and Michael Humphries told Defendant Maura Melcher of their fraudulent scheme against Plaintiffs and that they intended to file false police reports against Plaintiffs in order to force their daughter out of the relationship with them.

357.    Defendant Melcher knew the Humphries' allegations were false in their entirety as she was an eye witness to the forced signature of Sage Humphries' 2017 abuse prevention order.

358.    Defendant Melcher knew the Humphries' allegations were false in their entirety as she was an eye witness to Sage Humphries' parents forcing their adult child to see her.

359.    Defendant Melcher knew Micah and Michael Humphries' allegations were false in their entirety as their daughter, Sage, repeatedly told Ms. Melcher that her parents were "forcing her" out of the relationship with Plaintiffs and would not allow her to go back to Boston unless she signed it.

360.    Defendant had actual knowledge that Micah and Michael Humphries created a false narrative against Plaintiffs in order to force their daughter out of a relationship with Plaintiffs.

361.    Upon learning of Micah and Michael Humphries' plan to defraud, defame and harass Plaintiffs, Ms. Melcher had a duty to inform Plaintiffs of the false narrative and fraud the Humphries intended to commit whereas, instead, she aided and abetted the Humphries' fraud against Plaintiffs.

362.    Defendant Melcher knew Jane Doe 1's allegations were false in their entirety and that she had never met the Plaintiffs.

363.     Defendant had actual knowledge that Jane Doe 1 created a false narrative against Plaintiffs because she provided the abuse prevention orders to her.

364.     Upon learning of Jane Doe 1's plan to defraud, defame and harass Plaintiffs, Ms. Melcher had a duty to inform Plaintiffs of the false narrative and fraud the Jane Doe 1 intended to commit whereas, instead, she aided and abetted Jane Doe 1's fraud against Plaintiffs.

365.     The aftermath of Defendant Melcher's conduct to conceal fraud by aiding and abetting the Humphries and Jane Doe 1 was *catastrophic* including by preventing Plaintiffs from being able to properly defend themselves against the false and defamatory allegations which were stated to a mass audience in 2017, 2018 and later, in 2021.

366.     Defendant knew the false and defamatory allegations would completely destroy the reputation, careers and livelihoods of Plaintiffs but made their statements anyway.

367.     Defendant's conspiracy to commit fraudulent acts against Plaintiffs by equally encouraging Sage Humphries and Jane Doe 1 to harm Plaintiffs resulted in the loss of millions of dollars in revenue, assets and income, as Plaintiffs' businesses, good names and network of professional relationships were all completely destroyed due to the nature of the heinous allegations stated by Defendants, the Defendant's lies to the Court and Defendant's misconduct.

368.     As seen, *supra,* Plaintiffs themselves, *were* their business, contracted by numerous private contractors which immediately ceased working with Plaintiffs following the defamatory global media campaign waged against them, including but

not limited to contractors and sponsors who had employed and worked with Plaintiffs for *over fifteen years,* and who immediately disassociated themselves from Plaintiffs.

369.     Plaintiffs were sent death threats, threats of physical violence if they were to be seen in public and harassing messages, as hundreds of thousands of accounts reposted the defamatory and slanderous statements which were intentionally harmful to Plaintiffs, planned and stated by Sage Humphries and Jane Doe 1 who were encouraged by Maura Melcher to make such heinous and false statements to innumerable third parties.

370.     Maura Melcher even sent copies of the abuse prevention orders against Plaintiffs to their employers, resulting in terminated contracts.

371.     Plaintiffs were physically, forcibly and embarrassingly removed from public events and various restaurants and stores where their names and likenesses were recognized from the media that Defendant, the Humphries and Jane Doe 1 orchestrated.

372.     As a direct and proximate result of Defendants' conduct, Plaintiffs no longer work in their respective industries and have been completely unemployed; as Defendant destroyed any and all ability to work in the industries Plaintiffs worked their entire lives to be proficient in.

373.     As a direct and proximate result of Defendant's fraudulent actions and misconduct, Plaintiffs cannot work in an industry where there are children.

374.     Maura Melcher intentionally conspired with attorneys from Boies Schiller Flexner LLP to ensure Sage Humphries and Jane Doe 1 would gain media exposure to

a mass audience to gain an advantage against the Plaintiffs in litigation and to prejudice any potential juror.

375.     Maura Melcher intentionally enabled Sage Humphries in filing fraudulent police reports to mislead the Court in believing Plaintiffs had violated the abuse prevention orders, knowing they had not.

376.     As a direct and proximate result of Maura Melcher's misconduct, Plaintiffs lost everything they had ever worked for and are on government assistance programs to support their family, including their newborn child.

### J.   *Defendants' Destruction of Plaintiffs' Business, Goods and Services*

377.     As stated in the above references, Plaintiffs' names and likeness was their *only business*, which generated the entirety of their revenue, income and business, whereas Plaintiffs, themselves, and what they provided to their respective industries was solely based on what they provided as their name brands known as Dusty Button, Taylor Button, Mitch/Mitchell Button, Mitchell Taylor Button, "The Buttons", Button Built, Button Brand and Bravado by Dusty Button.

378.     The Defendant knew Plaintiffs' names and likeness was their only business and knew the Humphries were intentionally destroying the livelihoods of Plaintiffs through false and fraudulent allegations.

379.     The Defendant knew Plaintiffs' names and likeness was their only business and knew that Jane Doe 1 was intentionally destroying the livelihoods of Plaintiffs through false and fraudulent allegations.

380.     Plaintiffs' established business, goods and services were directly sourced and provided from their good names, talent, expertise and reputations, which were completely destroyed by Defendants' conduct.

381.     As stated in the above referenced facts, Plaintiffs were highly respected, extremely well-known, leaders of the dance industry and the automotive industry, and reliant on their businesses which were well established for over fifteen years, as each Plaintiff was their own business in which they were hired based on their desired skill sets in their industries, which others could not offer.

382.     Plaintiffs had established business with signed negotiated contracts with three companies to manufacture and sell their dancewear line which was in its initial phase and well under way as Plaintiffs were beginning the second wave of these partnerships when Defendants' conspiracy and concealment of fraud resulted in ability to commit acts of fraud against Plaintiffs resulting in false and frivolous statements which derailed all operations.

383.     Plaintiffs lost *any and all* business immediately and for the foreseeable future as a direct result of Defendants' conduct including by Defendant Melcher's concealment of fraud by aiding and abetting the false allegations of the Humphries resulting in abuse prevention orders obtained through fraud on the court, a frivolous and malicious litigation and defamatory statements about Plaintiffs, resulting in injurious falsehood.

384.     Plaintiffs lost any and all business immediately and for the foreseeable future as a direct result of Defendants' conduct including by Defendants' Micah and Michael

Humphries intentionally committing fraud against Plaintiffs and knowingly lying to law enforcement which is a criminal act.

385.     Defendants *knew* the nature of the false allegations and statements made by Sage Humphries were false in their entirety as she *intentionally* crippled Plaintiffs' business and ability to generate revenue and income as a direct result of Defendants' conduct in either committing fraud themselves or concealing the fraud which they knew was being committed; intentionally breaching their duties by not informing Plaintiffs of the Humphries' intent to commit fraud.

386.     Instead of informing Plaintiffs of the fraud she knew was being committed, Defendants chose to assist that fraud against Plaintiffs.

387.     Defendant *knew* Sage Humphries' statements were false and intentionally crippled Plaintiffs' goods and services which included Plaintiff Dusty Buttons' teaching, provided choreography, modeling, dancing, guest performing, speaking engagements, design concepts, marketing and brand ambassadorship, all of which were destroyed as Plaintiff Dusty Button was her own goods and services, as her name and career was her brand and her business.

388.     Defendant *knew* Jane Doe 1's statements were false and intentionally crippled Plaintiffs' goods and services which included Plaintiff Taylor Buttons' design work, custom automotive creations, sponsorships, commercial shoots, events, marketing, advertising and speaking engagements, all of which were destroyed as Plaintiff Taylor Button was his own goods and services, as his name and career was his brand and his business.

389.      Defendant *knew* **their own** statements were false and intentionally crippled Plaintiffs' goods and services which included Plaintiff Dusty Buttons' teaching, provided choreography, modeling, dancing, guest performing, speaking engagements, design concepts, marketing and brand ambassadorship, all of which were destroyed as Plaintiff Dusty Button was her own goods and services, as her name and career was her brand and her business.

390.      Defendant *knew* Sage Humphries' statements were false and intentionally crippled Plaintiffs' goods and services which included Plaintiff Taylor Buttons' design work, custom automotive creations, sponsorships, commercial shoots, events, marketing, advertising and speaking engagements, all of which were destroyed as Plaintiff Taylor Button was his own goods and services, as his name and career was his brand and his business.

391.      Defendants *knew* their own statements were false and intentionally crippled Plaintiffs' goods and services which included Plaintiff Dusty Buttons' teaching, provided choreography, modeling, dancing, guest performing, speaking engagements, design concepts, marketing and brand ambassadorship, all of which were destroyed as Plaintiff Dusty Button was her own goods and services, as her name and career was her brand and her business.

392.      Defendant *knew* Jane Doe 1's statements were false and intentionally crippled Plaintiffs' goods and services which included Plaintiff Taylor Buttons' design work, custom automotive creations, sponsorships, commercial shoots, events, marketing, advertising and speaking engagements, all of which were destroyed as Plaintiff Taylor

Button was his own goods and services, as his name and career was his brand and his business.

393.     Defendant intentionally made the decision to make false and defamatory statements which spread like fuel-soaked wildfire throughout the dance industry and community, automotive industry and community and further, to dance and automotive forums including but not limited to Facebook, Reddit and TikTok and was widely spread via communications through various messaging platforms nationally and internationally, causing **extreme distress and harm** to Plaintiffs.

394.     Defendant Melcher's concealment of fraud allowed Sage Humphries to make false and defamatory remarks to a mass media audience which were intentionally dishonest and were stated for an improper motive with the intent to injure Plaintiffs without just cause or excuse.

395.     Defendant Melcher's concealment of fraud allowed Jane Doe 1 to make false and defamatory remarks to a mass media audience which were intentionally dishonest and were stated for an improper motive with the intent to injure Plaintiffs without just cause or excuse.

396.     Defendant committed fraud by way of lying to law enforcement, forging documents, coercion and compulsion in order to intentionally harm Plaintiffs and conspire to create a false narrative of abuse against their daughter which did not exist to destroy everything Plaintiffs have ever worked for.

397.     Defendants knew that, as a result of their false statements, Plaintiffs would suffer financial harm and never be capable of generating revenue using their names again.

398.     Plaintiffs suffered complete loss of business and sales including that Plaintiffs income was solely based on a per performance basis whereas, Plaintiffs' income was generated upon completion of work as they were themselves, their business.

399.     For example, Plaintiff Dusty Button's teaching classes and performances were immediately canceled following the defamatory statements and heinous allegations made by Maura Melcher, Sage Humphries and her parents, Micah and Michael Humphries.

400.     As another example, Plaintiff Dusty Button immediately lost any and all business with all scheduled dance studios, summer intensive courses, and events which she was scheduled to guest teach and choreograph for, including scheduled guest performance appearances nationally and internationally as a direct result of Defendants' malicious conduct.

401.     As another example, Plaintiff Taylor Button immediately lost any and all business related to his brands including his business and brand "Button Built", with all scheduled events in the automotive industry including pre-planned design builds for clients and customers including prominent name brands which were sponsors of Plaintiff Taylor Button, all of whom canceled their builds and design concept work with Plaintiff for the foreseeable future.

402.     Further, Plaintiffs, both immediately lost any and all contracts with sponsors, endorsements and event appearances in their respective industries including but not limited to: BLOCH Inc., Tiger Friday, Capezio, Yumiko, MPG Sport, Fenti, Volcom, Discount Dance, RedBull, Adidas, WeWork, Rotiform Wheels, Brixton Forged, Momo racing, Bride Racing, Nitto Tires, Toyo tires, Brembo, Ferrari Parts, Tial

Concepts, Xona Rotor, Aviva Performance, Impressive Wraps, Inozetek, Tubi Style, Vivid Motorsport, Voodoo Automotive, SEMA Auto Show, Crep Protect, Accuair Suspensions, Currie axels, Pelican LLC, Greyman Tactical, PRP seats, KMC wheels, RAM mounts, Metalcloak suspension and body components, THULE, Rebel Offroad, PPG paint, Morimoto LED lighting solutions, BAJA off-road lighting solutions, Powertank, Maxxtraxx, HP tuners, Emory Motorsports, SABELT and Illest, amongst many others not listed here.

403.     Plaintiffs not only lost their business "Button Brand", suffering the complete destruction of their self-made brand but were forced to refund customers for items sold due to the connection of the false allegations and defamatory statements made by Sage Humphries, her parents and the Defendant, who equally and wholly supported and aided their fraudulent statements.

404.     Plaintiffs completely lost and forfeited their brand, Button Brand due to defamatory statements made by Defendants as they knew the allegations were false in their entirety and did not disclose their knowledge of the falsity of the allegations, including by making those defamatory statements themselves.

405.     Plaintiffs had a pre-planned, negotiated contract with dancewear company Tiger Friday whereas, Plaintiffs designed, licensed and would market the line of leotards and dancewear utilizing the Button name and brand to expand their already successful company and image.

406.     Plaintiffs' contract was immediately canceled as a direct result of Defendants' false and defamatory statements.

407.     Plaintiffs' brand, Bravado by Dusty Button was a dancewear and leotard line for dancers in which Plaintiffs had previous negotiated contracts with sponsored third-party companies and distributors such as Discount Dance, Showstopper and GK Elite, as well as advertised and garnered sales of this line through their own website "bravadodancewear.com" and through Plaintiffs' former social media page on Instagram, @bravado_dancewear and Plaintiffs' personal social media account, @dusty_button.

408.     Bravado by Dusty Button was sold at various dance events for distribution, whereas, sales and contracts were immediately terminated following $100,000.00 of partner investment and nearly a year of travel and planning as a direct result of Defendants' false and defamatory statements.

409.     Defendant's breach of duty, fraud, defamatory statements and concealment of fraud forced the termination of Bravado by Dusty Button as all sales came to a halt and additionally, customers demanded refunds stating the brand was associated with "sexual predators", "perpetrators", "criminal behavior" and "rapists".

410.     Immediately following the false and defamatory statements in the media and the press, Plaintiffs' businesses, Button Brand, Button Built, and Bravado by Dusty Button were completely destroyed, losing hundreds of thousands of dollars in revenue and costs, which were already paid, promised and negotiated with third party companies and distributors which was a direct result of Defendants' negligence, breach of duty, failure to disclose and concealment of fraud.

411.     Any and all marketing for the above reference brands with associated accounts advertising those brands including all sales were terminated as a direct result of Defendant's conduct.

412.     The seriousness of Defendant's conduct proves a clear intention to cause damage to Plaintiffs.

413.     The nature and substance of the false allegations made by Jane Doe 1 were encouraged, concealed and known by Defendants which resulted in the defamatory remarks and false allegations as Defendants had actual knowledge that her statements were untrue and proving that Defendants' conduct was willful, intentional, malicious, reckless and negligent.

414.     The nature and substance of the false allegations made by Sage Humphries and her parents were encouraged, concealed and known by Defendant which resulted in the defamatory remarks and false allegations as Defendant had actual knowledge that her statements were untrue and proving that Defendants' conduct was willful, intentional, malicious, reckless and negligent.

415.     Defendants' conduct resulting in the false allegations made by Jane Doe made to a mass audience which she intended to, and did reach, proves without question, the intent to harm Plaintiffs' careers, businesses and reputations as the false statements were aimed *specifically* at Plaintiffs' colleagues, clients and target demographics through these defamatory statements in the global media campaign waged against them including but not limited to published defamatory statements in The New York Times, Cosmopolitan, The Boston Globe, ABC News, The Daily Mail, CNN and

other mass media outlets including the press and nearly every major news outlet and social media account that were otherwise outside of Plaintiffs' industries.

416.     Defendants' conduct resulting in the false allegations made by Sage Humphries and her parents, made to a mass audience which she intended to, and did reach, proves without question, the intent to harm Plaintiffs' careers, businesses and reputations as the false statements were aimed *specifically* at Plaintiffs' colleagues, clients and target demographics through these defamatory statements in the global media campaign waged against them including but not limited to published defamatory statements in The New York Times, Cosmopolitan, The Boston Globe, ABC News, The Daily Mail, CNN and other mass media outlets including the press and nearly every major news outlet and social media account that were otherwise outside of Plaintiffs' industries.

417.     Defendant's conduct including concealment of fraud, breach of duty and negligence caused the *entire* dance industry to not only turn against Plaintiff Dusty Button, (who had worked her entire life to build the reputation she was known for in her industry and was at the pinnacle of her career), but caused the industry to disassociate from Dusty, repost the defamatory statements and false allegations and cease all communication with her, including halting any and all forms of employment for which she had been in extremely high demand for, for over fifteen years.

418.     Defendant's conduct including concealment of fraud, breach of duty and negligence caused the *entire* automotive industry to not only turn against Plaintiff Taylor Button, (who had worked over thirteen years to build the reputation of the idol he was and that he was known for in his industry and was at the pinnacle of his

career), but caused the industry to disassociate from Taylor, repost the defamatory statements and false allegations and cease all communication with him, including halting any and all forms of employment for which he had been in extremely high demand for, for over thirteen years.

419.    The false allegations and defamatory remarks made by Defendant ignited a viral response which spread like wildfire, resulting in a 'grapevine' effect throughout Plaintiffs' industries including to their co-workers, clients, employers, potential employers, parents and children of those Dusty taught in the dance industry, sponsors, potential sponsors, friends and family involved in the industries, customers, former employers, agencies, dance studio owners and other various third parties whereas, Plaintiffs could not defend themselves against such widespread industry gossip which were preventable but instead, were encouraged by Defendants including by neglecting their duties, concealing fraud, failing to disclose pertinent information regarding Jane Doe upon discovery of her false allegations.

420.    Defendant specifically targeted Plaintiffs even after knowing her clients' allegations were false and fraudulent in their entirety and even after having evidence in her possession, proving they were fraudulent.

421.    To this day, Plaintiffs keep their phones on silent as it results in severe trauma and PTSD as a direct result of the harassment, they received following the false allegations and defamatory statements made by Defendants in an effort to conceal fraud.

422.    As previously stated herein, Plaintiffs' business, was their names and likeness as they were individually contracted due to their reputations of who they were as a business and as their names were their brands.

423.    Plaintiffs were well-known and prominent figures in their industries and therefore, were contracted, employed and in high-demand because of their names and reputations, as they, themselves were their businesses for over fifteen years.

424.    The shock and confusion from the defamatory statements, coupled with Defendant's negligence resulted in intense threats, harassment, and severe bullying including severe emotional trauma which has taken a tremendous toll of Plaintiffs and their mental health.

425.    Plaintiffs were so traumatized by the actions of Defendants that they both suffered from suicidal thoughts, nearly taking their own lives as a direct result of the fraudulent misconduct committed by Defendant.

426.    Defendant took affirmative steps to ensure Plaintiffs were without the ability to seek recourse against her until now with the intentional harm she inflicted on Plaintiffs by way of forcing them to be unemployed; by aiding and abetting the false allegations made by Sage Humphries, with no ability to generate income, releasing them of any responsibility as they knew it was a possibility for their statutes of limitation to expire before Plaintiffs could take action against them.

427.    The Defendant intentionally committed fraud on the Court in order for her client to commit further fraud against the Plaintiffs as she assured her client would be able to use fraudulently granted abuse prevention orders as grounds to bring further acts of fraud against the Plaintiffs many years later.

428.     Defendant ensured the granted restraining orders and the false allegations would disable Plaintiffs from ever being able to seek legal recourse against her.

429.     Accordingly, any statute of limitations applicable to Dusty and Taylor's claims, if any, is tolled.

430.     Defendant's actions described above deprived Dusty and Taylor of the opportunity to commence this lawsuit before now.

431.     Defendant is equitably estopped from asserting a statute of limitations defense as to Plaintiffs' claims.

432.     Allowing Defendant to do so would be **unjust**.

433.     Defendant took active steps to prevent Dusty and Taylor from commencing **this** lawsuit before now, including by destroying Plaintiffs' ability to work including by aiding and abetting the defamatory global media campaign against Plaintiffs and by using tactical intimidation by way of using her power and influence to suppress and silence Plaintiffs from defending against the false and defamatory posts and remarks through litigation by Sage Humphries and her parents.

434.     Plaintiffs received additional discovery regarding Defendant's conduct during the course of discovery in Nevada whereas, Plaintiffs were not aware of such negligence and concealment of fraud until the years 2022 and 2023 including but not limited to the deposition of Sage Humphries which further exposed Maura Melcher's fraud and concealment for *over seven years*.

435.     Plaintiffs have suffered and continue to suffer mental anguish, severe emotional distress and loss of enjoyment of life as a direct and proximate result of Defendant's conduct.

436.    Had Plaintiffs succumbed to the darkness that the Defendant cast over their lives, businesses, families and futures, this litigation would be criminal rather than civil, as she is directly responsible the fraudulent actions that nearly ended two lives that were once the brightest lights of their careers for millions of people abroad.

## CAUSES OF ACTION

### COUNT I – NEGLIGENCE
### (*Plaintiffs against Maura Melcher*)

437.    Plaintiffs repeat, reallege and incorporate each and every allegation contained above as though fully set forth herein.

438.    Defendant Maura Melcher had a duty to prevent her client from committing the criminal act of fraud against Plaintiffs

439.    Defendant had a duty to Plaintiffs to prevent harm caused by their client including but not limited to, because she was in direct possession of evidence which contradicted her client's false allegations against the Plaintiffs.

440.    Defendant had a duty to uphold her ethical obligations.

441.    Defendant owed a duty to Plaintiffs whereas, upon discovery of their client's fraudulent allegations, Defendant's duty was to report the fraud committed by their client; to law enforcement, to the Boston Municipal Court and to the District Court of Nevada.

442.    Defendant owed a duty to Plaintiffs whereas, she knew her client and her client's parents were committing fraud by lying to law enforcement.

443.    The Defendant was negligent in turning a blind eye to her clients' fraud including by neglecting to enforce the truth against the false and fraudulent allegations stated by her clients Sage Humphries, her parents and her client, Jane Doe 1.

444.     Defendant knew that Sage Humphries was never abused by the Plaintiffs.

445.     The Defendant dismissed imperative information which should have resulted in her ethical duty to dismiss her client's fraudulent allegations but instead, the Defendant disregarded the fraud and allowed her clients, (Sage Humphries and Jane Doe 1) to commit fraud and perjury.

446.     The Defendant was negligent in her regard for the truth by allowing and committing fraud on the Court by withholding documents and lying to law enforcement to enable her clients.

447.     Defendant Melcher failed to meet the standard of care that a reasonable person would have maintained under the same circumstances as her actions and lack thereof, fell below the standard of care that a reasonable person would have maintained under the same circumstances by not only neglecting to report fraud but aiding in that fraud on the Court to ensure a result favorable to her clients.

448.     Defendant's conduct was the direct cause of Plaintiffs' harm whereas; Plaintiffs' harm would not have occurred but for the Defendants' conduct including by lying to the Court innumerable times, during at least four legal proceedings.

449.     Defendant's conduct was the legal cause of Plaintiffs' harm whereas the Defendants knew their client was lying and aided them in creating a narrative most favorable to their false allegations.

450.     Plaintiffs suffered *actual harm* and loss as a result of the Defendant's negligence.

451.     Defendant Melcher had a duty to prevent her client from committing the criminal act of fraud against Plaintiffs, having an awareness that her client Sage

Humphries, did not even want to file abuse prevention orders against the Plaintiffs but was otherwise, forced by her parents against her will.

452.     Defendant Maura Melcher was negligent in allowing forged documents to be submitted to the Court, knowing they were forged.

453.     Defendant Melcher owed Plaintiffs a legal duty to prevent her client from committing fraud whereas, Defendant Maura Melcher endorsed her client's fraud with reckless disregard to the truth.

454.     Defendant Maura Melcher, had a duty to protect Plaintiffs from her clients by ensuring that her client's actions did not harm them; whereas the lawyer's duty is rooted in their professional responsibility to uphold the law and maintain the integrity of the legal system including by way of communicating with third parties, such as the parents of her client prior to her client committing fraud against Plaintiffs, resulting in irreparable harm.

455.     Defendant Maura Melcher had a duty to protect Plaintiffs from her clients including by advising her clients on their duties, taking corrective action, and communicating with affected parties whereas, Defendant Melcher recklessly and negligently provided opportunity for her clients to commit fraud and perjury.

456.     Defendant Maura Melcher was negligent in provided a copy of Sage Humphries' affidavits to Jane Doe 1.

457.     Defendant was negligent in providing Sage Humphries' communications to her parents and thereby destroying the attorney-client privilege.

458.     Defendant was negligent in her duty to review evidence and information which proved her client's testimony to be perjury in the 2017, 2018, and 2023 proceedings.

COMPLAINT AND DEMAND FOR JURY TRIAL

459.     Defendant was negligent in her withholding of documents from the Court.

460.     Defendant Maura Melcher owed a duty to Plaintiffs in preventing her clients from committing fraud against them whereas, upon learning of the events alleged in the Nevada complaint, Ms. Melcher had a duty to report the contradicting allegations to the Court and/or to Plaintiffs.

461.     Ms. Melcher failed in her duty to warn and protect the Plaintiffs whereas, upon speaking with Plaintiffs on multiple occasions while representing Sage Humphries, she failed in her duty to disclose relative information which was not confidential in order to prevent her client from harming Plaintiffs and instead, allowed her client to continue harming Plaintiffs who committed fraud against them.

462.     Ms. Melcher received evidence which proved her client and her client's parents lies to the Court and to law enforcement but neglected to correct those lies with the Court or with law enforcement and instead, stated they were true, knowing they were false.

463.     Ms. Melcher failed in her duties to her clients by allowing them to commit such fraud against Plaintiffs including by claiming such egregious false and fraudulent allegations whereas, the result will implicate her clients in the criminal acts of fraud, perjury and false statements to a police officer amongst other heinous acts where her clients will be held liable.

464.     Defendant had an obligation to exhibit a reasonable degree of caution and prudence when engaging in actions that could affect others and as such, was obliged to exercise *reasonable care* but was negligent in providing that obligation, resulting in direct harm to the Plaintiffs.

465.     The specific damage Plaintiffs experienced and continue to experience was foreseeable whereas, it should have been anticipated that the actions of Defendant would lead to the harm caused by the perpetrator therefore, Defendant is solely responsible for the harm caused to Plaintiffs.

466.     Defendants' actions and inactions caused *direct* and *actual* harm to Plaintiffs including by causing distress, humiliation, harassment from third parties, death threats, total loss of employment, total loss of business relationships, complete loss of wages, total loss of assets, suicidal thoughts and mental anguish which they continue to endure today as her negligence and complete disregard for the truth resulted in such destruction.

467.     WHEREFORE, Plaintiffs Dusty and Taylor Button demand judgment against the Defendant for damages, punitive damages, court costs, and such other relief as the Court deems just and proper.

## COUNT II – CIVIL CONSPIRACY
### (*Plaintiffs against Maura Melcher*)

468.     Plaintiffs repeat, reallege and incorporate each and every allegation contained above as though fully set forth herein.

469.     Defendant entered into an agreement to commit an unlawful or tortious act against Plaintiffs including by knowing Sage Humphries was never abused by Plaintiffs but chose to conspire, using Plaintiffs as the scapegoat for the false narrative created by Micah and Michael Humphries and ultimately, their daughter, Sage.

470.     Defendant entered into an agreement to commit an unlawful or tortious act against Plaintiffs including by knowing Jane Doe 1's allegations were false in their entirety but chose to conspire, using Plaintiffs as the scapegoat for the false narrative

created by Micah and Michael Humphries including by giving Jane Doe 1 a copy of Sage Humphries' affidavits from the Boston Municipal Court proceedings.

471.     Defendant entered into an agreement to commit an unlawful or tortious act against Plaintiffs with Michael and Micah Humphries to conceal the evidence of illegal sexual activities with Daryl Katz, which their daughter left on Plaintiffs' hard drive in 2017.

472.     The agreement between the parties was made with the intent to commit a tort or to achieve an unlawful objective including by conspiring and defaming Plaintiffs to achieve the goal of destroying Plaintiffs' ability to seek legal recourse against them and causing complete destruction to their finances in order to cripple Plaintiffs' defense, in an effort to gain an advantage in the media and in the civil litigation in Nevada filed by Sage Humphries.

473.     Defendants made an overt act towards carrying out the agreement by committing criminal acts against Plaintiffs such as knowingly filing false police reports against Plaintiffs, and committing fraud on the Court by lying to the Court regarding factual statements made about the Plaintiffs which were knowingly untrue.

474.     Defendant knew the abuse prevention orders were not written by her clients but that she was forced to sign those orders.

475.     Defendant knew she would be providing the catalyst to a litigation in a separate forum for Sage Humphries and Jane Doe 1 following the proceedings in Boston, MA and providing Jane Doe 1 with Sage Humphries' affidavit.

476.     As a direct and proximate result of Defendants' conspiracy, Defendants lost any and all contracts, employment, sponsors, associated business relations, and career

COMPLAINT AND DEMAND FOR JURY TRIAL

opportunities including because Defendants led any and all viewers or readers of their defamatory statements believe they had committed a criminal act.

477.    Maura Melcher had actual knowledge that her clients caused Plaintiffs harm by filing a frivolous lawsuit (years later), against them, which alleged heinous and egregious crimes about them and did nothing to protect and warn as required by her duties as an attorney but instead, assisted her clients in continuing to commit fraud against Plaintiffs after providing resources for her client to contact the very people she knew did not harm her including that Plaintiffs have never met Jane Doe 1.

478.    Defendant Melcher colluded to commit an unlawful and unethical act such as providing false and fraudulent information and statements to the Court and to law enforcement, engaging in criminal acts to coordinate coverage and mutual influence to cripple Plaintiffs' defense and destroy Plaintiffs' right to due process including but not limited to her client publishing and disclosing a lawsuit prior to even serving the complaint on Plaintiffs in 2021.

479.    Defendant colluded with others to gain an advantage, preventing Plaintiffs from seeking recourse until now, to cripple Plaintiffs defense against the lawsuit which would be filed three months following.

480.    Defendant's conduct proximately caused Plaintiffs to suffer severe mental and emotional distress, pain and suffering, mental anguish, and loss of enjoyment of life.

481.    Defendant's unlawful actions were intentional, done with malice, and/or showed a deliberate, willful, wanton, and reckless indifference to Plaintiffs' rights including that she knew her client Sage Humphries' false allegations and police

reports were proven untrue by evidence in her possession but which she ignored in order to assure abuse prevention orders under false pretenses against the Plaintiffs.

482.     Defendant made an express agreement with Sage Humphries, her parents, and later, Jane Doe 1; to commit a wrong whereas, Defendant conspired to create and continue a false narrative against the Plaintiffs, in a joint effort to destroy their business, reputations, careers, ability to work and financial ability to defend prior to Sage Humphries' lawsuit which was filed four years later, to intentionally deprive Plaintiffs in an Overt Act in Furtherance causing economic loss.

483.     Defendant's actions resulted in "Unfair Competition" by way of coordinating efforts to spread false information about Plaintiffs, (whose names and likeness were their business), to gain an advantage against the Plaintiffs.

484.     Upon belief, and through circumstantial evidence, Maura Melcher colluded with Sage Humphries' father, (an attorney) and with Judge McKenna from the Boston Municipal Court prior to both proceedings in 2017 and 2018.

485.     Defendant's proof of conspiracy lies within their pattern to continue conspiring and unethically colluding with others to gain an unlawful advantage in legal proceedings.

486.     In the event any applicable statutes apply, Plaintiffs' claims must be tolled for the following reasons including but not limited to:

1) "During the pendency of a related lawsuit or arbitration related to the same defamatory statements" whereas, Defendant's defamatory posts and statements are at issue in four other pending lawsuits and, "*the pendency of a motion to dismiss a related lawsuit may toll the statute of limitations until the motion is resolved*".

2)  Threats from a licensed attorney in an attempt to prevent Plaintiffs from seeking

recourse against her; such as Michael Humphries being a licensed attorney who

threated Plaintiffs on innumerable occasions in 2017, leading Plaintiffs to believe they

could not seek legal recourse against them or associated third-parties.

3)  A continuing wrong

And;

4) Defendant's withholding of information including perjured testimony, affidavits

and false police reports, which were not discovered until 2022 and 2023.

487.      Plaintiffs have *actual knowledge* that substantial additional evidentiary

support, which is in the exclusive possession of Defendant and other third parties

including but not limited to non-parties related to Sage Humphries and Jane Doe 1,

Defendants' agents and other third- parties, will exist for the allegations and claims set

forth above after a reasonable opportunity for discovery.

488.      Plaintiffs are entitled to punitive damages because Defendant's defamatory

statements were made with hatred, ill will, and spite, with the intent to harm Plaintiffs

or in blatant disregard of the substantial likelihood of causing them harm and because

Defendant's conduct constitutes intentional acts of conspiracy which were made with

**actual malice** towards Plaintiffs whereas, the conduct is part of a pattern of similar

conduct directed at the public generally, indicating a reckless disregard for civil

obligations; Plaintiffs seek an award for punitive damages.

489.      Moreover, the fraud tends to so harm the reputation of Plaintiffs, (it did), as to

lower their professional reputation in the community or deter third persons from

associating or dealing with them including termination of any and all business, contracts or employment and, as such, constitute Civil Conspiracy.

490.    Accordingly, any statute of limitations applicable to Dusty and Taylor's claims, if any, is tolled.

491.    Defendant's actions described above, including intentional withholding of documents and false police reports, deprived Dusty and Taylor of the opportunity to commence this lawsuit before now.

492.    Defendant is equitably estopped from asserting a statute of limitations defense as to Plaintiffs' claims.

493.    Allowing Defendant to do so would be **unjust.**

494.    WHEREFORE, Plaintiffs Dusty and Taylor Button demand judgment against the Defendant for damages, punitive damages, court costs, and such other relief as the Court deems just and proper.

### COUNT III – CIVIL AIDING AND ABETTING
*(Plaintiffs against Maura Melcher)*

495.    Plaintiffs repeat, reallege and incorporate each and every allegation contained above as though fully set forth herein.

496.    Defendant knew that her client Sage Humphries committed fraud.

497.    Defendant knew that her client's parents coerced her to commit fraud and/or intended to commit fraud resulting in the direct and proximate irreparable harm to Plaintiffs.

498.    Defendant knew that her client Jane Doe 1 committed fraud.

499.    Defendant aided and abetted the fraud of both clients and Sage Humphries' parents by filing false police reports with Sage Humphries, intentionally making

misrepresentations to the Court, lying to the Court and committing fraud upon the Court including by withholding documents which proved her client's allegations to be false in their entirety and which implicated her client, (Sage Humphries') parents in fraud.

500.     Defendant filed forged documents with the Court.

501.     Defendant stated the police reports filed by Sage Humphries, "were not necessary" to bring to the Court, which proved her client to be a liar.

502.     Defendant aided Jane Doe 1 by providing her with Sage Humphries' affidavits so that she could plagiarize false allegations in the District Court of Nevada.

503.     Defendant knew that they were aiding and abetting Jane Doe 1, Sage Humphries and her parents and in fact, encouraged them to continue committing fraud and to lie to law enforcement including by committing those crimes with them, herself.

504.     Defendant knew that she was aiding and abetting fraud and failed to take reasonable steps to prevent or stop Sage Humphries' frivolous claims and in fact, assisted her in creating and continuing them.

505.     The Defendant knew the existence of an underlying fraud which was used to create a false narrative and ensure abuse prevention orders were granted under false pretenses whereas, the fraudulent allegations made by Sage Humphries and her parents and forged documents which were submitted were known and supported by Maura Melcher as she either had knowledge of its existence, or discovered its existence but did not prevent or stop the underlying fraud but rather, encouraged and

continued to aid that fraud including at the time and date the events took place beginning in 2017 and until the time of this complaint being filed.

506.      The Defendant had *actual knowledge* of the crimes being committed by Sage Humphries and/or had *actual knowledge* of the crimes which they were committing themselves against Plaintiffs which were part of a calculated scheme which they planned and/or committed and which is still being committed as of the time and date of this complaint being filed.

507.      Defendant intended to provide help, aid, and/or encouragement to commit the crime and in did in fact, assist her clients and other third-parties such as Sage Humphries' parents in committing the crimes of perjury, forgery and fraud, in which Defendant continues to help, aid and encourage those crimes as of the time and date of this complaint being filed.

508.      Defendant intentionally assisted and/or encouraged the filing of a frivolous lawsuit, knowing harm would result against Plaintiffs.

509.      Defendant knew that Sage Humphries' parents were paying for her services as they provided financial support to Sage Humphries, forcing her into therapy and threatening her to end her relationship or she would not be allowed to return to Boston, as they would not pay for her flight.

510.      Defendant provided substantial assistance to her clients and third parties such as Sage Humphries' parents in achieving the fraud against Plaintiffs whereas, her actions and inactions significantly contributed to the success of the fraud against Plaintiffs in which her clients and said third-parties are continuing to commit as of the time and date of this complaint being filed.

511.    Defendant's misconduct, encouragement and aid actually provided the confidence to the perpetrator whereas Maura Melcher's actions helped the perpetrator, (here, Sage Humphries, her parents and Jane Doe 1), in committing the crime of fraud against Plaintiffs including but not limited to causing irreparable harm to Plaintiffs in which she and her clients, and said third-parties are still committing as of the time and date of this complaint being filed.

512.    Defendant knowingly filed false police reports with her client Sage Humphries and fraudulently obtained abuse prevention orders by forging documents for client and/or witnessing the forged documents and submitting them on behalf of her client in Boston, MA.

513.    In the event, any applicable statutes apply, Plaintiffs' claims must be tolled for the following reasons including but not limited to:

1) "During the pendency of a related lawsuit or arbitration related to the same defamatory statements" whereas, Defendant's defamatory posts and statements are at in two other litigations and, "*the pendency of a motion to dismiss a related lawsuit may toll the statute of limitations until the motion is resolved*".

2) Threats from a licensed attorney in an attempt to prevent Plaintiffs from seeking recourse against her; such as Michael Humphries being a licensed attorney who threated Plaintiffs on innumerable occasions in 2017, leading Plaintiffs to believe they could not seek legal recourse against them or associated third-parties including the collusion between Maura Melcher and Michael Humphries.

3) A continuing wrong, whereas, Maura Melcher continues to perjure herself and commit fraud upon the Court.

And;

4) Plaintiffs recently discovered Maura Melcher's fraud during the pendency and discovery of litigation in Nevada in the years of 2022 and 2023 which they otherwise were never aware of as Maura Melcher concealed such fraud on the Court including perjured testimony, withheld police reports, lies to law enforcement and intentional misrepresentations to the Court.

514.     Defendant helped to conceal or cover up evidence of a crime being committed by their child and/or their client whereas all Defendants were in direct contact with Plaintiffs regarding the perpetrators crimes and intentionally withheld and/or concealed information regarding their friend, child and/or clients' actions of fraud against Plaintiffs including but not limited to lying to the police and to the District Court of Nevada which is a Federal agency to protect the fraudulent actions of the perpetrator therefore, irreparably harming Plaintiffs in which continues as of the time and date of this complaint.

515.     Defendant is equitably estopped from asserting a statute of limitations defense as to Plaintiffs' claims.

516.     Allowing Defendant to do so would be **unjust.**

517.     Plaintiffs have actual knowledge that substantial additional evidentiary support, which is in the exclusive possession of Defendant, (which is not privileged), and other third parties including but not limited to non-parties Michael and Micah Humphries, Defendants' agents and other third- parties, which will exist for the allegations and claims set forth above after a reasonable opportunity for discovery.

518.      Defendant failed to report their clients' fraud and in fact, aided and abetted that fraud, and did not take action to stop it from happening including by encouraging, enforcing and/or aiding the perpetrators, (Jane Doe 1, Sage Humphries and her parents), to commit and continue their fraud against Plaintiffs, causing irreparable harm which is continuing as of the time and date of this complaint being filed.

519.      WHEREFORE, Plaintiffs Dusty and Taylor Button demand judgment against the Defendant for damages, punitive damages, court costs, and such other relief as the Court deems just and proper.

## COUNT IV – INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS
### (*Plaintiffs against Maura Melcher*)

520.      Plaintiffs repeat, reallege and incorporate each and every allegation contained above as though fully set forth herein.

521.      Defendant acted intentionally and/or recklessly when either aiding and abetting their client's crimes against Plaintiffs including by neglecting to protect and warn upon discovery of their client's fraud and egregious acts of harm against Plaintiffs which she equally encouraged and concealed in collusion with Sage Humphries, her parents and Jane Doe 1, knowing it would harm Plaintiffs.

522.      The Defendant intentionally lied to the Court even after knowing her client's allegations were false including that the police reports which were withheld, proved that her client's allegations were false.

523.      The Defendant intentionally lied to the Court and made intentional false statements and misrepresentations to the Court in order to succeed in obtaining abuse prevention orders against innocent parties which did not abuse her client.

524.     The Defendant lied to the Court even after it was proven that Plaintiffs never abused her client.

525.     The Defendant provided affidavits from Sage Humphries to Jane Doe 1 knowing she intended to plagiarize the documents for a fraudulent use in another forum.

526.     The Defendant intentionally colluded with Micah and Michael Humphries knowing that Micah and Michael Humphries were forcing their adult daughter to sign the restraining orders which they wrote for her.

527.     Upon belief, the Defendant was largely responsible for the termination of Dusty Button's contract with the Boston Ballet including by colluding and conspiring with Sage Humphries' parents in creating a false and fraudulent narrative against the Plaintiffs.

528.     The Defendant's conduct was a direct and proximate cause of harm to Plaintiffs, resulting in **severe emotional distress** due to the actions and misconduct of Defendant's willful and/or reckless and negligent behavior.

529.     Defendant was actively involved in assisting Sage Humphries and Jane Doe 1 in commencing and continuing a frivolous lawsuit against Plaintiffs with false allegations of sexual abuse, sex trafficking, forced labor, involuntary servitude, battery, assault, false imprisonment, intentional infliction of emotional distress, breach of fiduciary duty and sexual exploitation of a minor whereas, Defendants either knew or later discovered that their daughter's and/or client's allegations were fraudulent and would undoubtedly and severely bring harm on Plaintiffs.

530.     The Defendant conspired with attorneys from Boeis Schiller Flexner, knowing that her client's allegations were false to draft a complaint which contradicted the already false allegations in Boston, MA.

531.     The Defendant knew that Sage Humphries and her parents filed *over seven false police reports* against the Plaintiffs and in some cases filed those reports with them which caused **severe emotional distress** as it forced Plaintiffs to contact any and all law enforcement to discover the reports years later after they already damaged their reputation with the defamatory statements made within those false police reports; which were used online and against them in Court proceedings which continue to the time and date of this complaint being filed.

532.     No reasonable person in Sage Humphries' circumstances would have believed that there were reasonable grounds to bring the lawsuit against Plaintiffs including because upon Sage Humphries' own admissions, Defendant possessed all *actual* knowledge and evidence proving Sage Humphries' allegations to be false and then encouraged her to commit fraud against Plaintiffs while in some cases, assisting that fraud.

533.     No reasonable person in Jane Doe 1's circumstances would have believed that there were reasonable grounds to bring the lawsuit against Plaintiffs including because Plaintiffs have never met Jane Doe 1; Defendant possessed all *actual* knowledge and evidence that Plaintiffs did not know Jane Doe 1 and then encouraged her to commit fraud against Plaintiffs while in some cases, assisting that fraud.

534.     Plaintiffs were *severely* and irreparably harmed by Defendant's fraudulent actions and Sage Humphries' false allegations against them in 2017 and 2018 whereas,

Plaintiffs have not been able to work a single job due to the false and defamatory allegations which were published in the New York Times in 2021 and their names being globally recognized in the media as Sage Humphries and her parents, other non-parties including Sage Humphries' attorney in the Nevada litigation who Plaintiffs are suing for defamation, waged a **global defamatory media campaign against Plaintiffs**.

535.     Defendant engaged in *extreme and outrageous* conduct with the intention of causing Plaintiffs severe emotional distress by first making false, derogatory, defamatory and fraudulent statements of fact to the Court about the Plaintiffs in order to lay the grounds which would make it seem as though Sage Humphries' allegations were true by confirmation of the Court, while knowing the allegations were false in their entirety and that she engaged in fraud to create an entirely false narrative against the Plaintiffs.

536.     Defendant's conduct was a substantial factor in causing harm on Plaintiffs as Defendant's actions and/or inactions in aiding and abetting her clients and various third parties in committing fraud against Plaintiffs, including the salacious and defamatory statements to third parties which were a direct and proximate cause of Defendants' conduct entirely disseminated any and all employment, sponsorships and relationships with employers, sponsors, clients or businesses which previously respected and employed or sponsored Plaintiffs including defamatory statements which were not only made in person but on social media and in the news.

537.     Upon belief, Maura Melcher sent hard copies of the abuse prevention orders in collusion with Sage Humphries' parents to various employers of the Plaintiffs, causing termination of contracts and employment.

538.     Defendant's conduct was *extreme and outrageous* whereas; Defendant, in collusion and conspiracy with Sage, Micah and Michael Humphries withheld pertinent information from a Court Ordered subpoena issued and served by Plaintiffs in October of 2023; including therapy records, communications and documents which verified the fraud and perjury which was committed against Plaintiffs and the many illegal acts committed by the Humphries family and Maura Melcher against Plaintiffs.

539.     Defendant's conduct was extreme and outrageous whereas; Defendant lied to law enforcement on at least two occasions and potentially over seven different occasions.

540.     Defendant participated in attorney-media collusion and interference, compromising the fairness and integrity of the lawsuit which Plaintiffs were not yet served with and thereby, strategically disrupting the normal course of litigation and intentionally causing extreme harm to Plaintiffs including by influencing public perception and any potential juror prior to Plaintiffs having the ability to prepare a defense.

541.     Defendant possessed information and had access to information which showed that the statements within the Boston Municipal Court filings, the Nevada lawsuit and later, the article in the New York Times and other media outlets were false but neglected to uphold her ethical obligations by aiding and concealing the fraud which allowed the seven years of irreparable harm to take place against the Plaintiffs.

542.    Defendant made statements for which they had no factual basis and in fact, had factual basis which contradicted the false allegations of Sage Humphries, her family and Jane Doe 1.

543.    Defendant suggested Plaintiffs were involved in a serious crime involving moral turpitude or a felony, exposing Plaintiffs to ridicule in which reflected negatively on Plaintiffs' characters, morality and integrity whereas, the defamatory and perjured statements impaired Plaintiffs' financial well-being including by lying to the Court to ensure abuse prevention orders were granted against the Plaintiffs based on the perjured testimony of her client, her misrepresentations and lies to the Court and the false police reports filed with intentionally false allegations which the police confirmed were unfounded.

544.    Defendant has never corrected or attempted to correct her perjured statements and has in fact, doubled down on her perjured statements by making the same perjured statements six years later at separate Boston Municipal Court hearings, again stating that her client, Sage Humphries, was "underage" at the time of her consensual dating relationship with Plaintiffs.

545.    In the event, any applicable statutes apply, Plaintiffs' claims must be tolled for the following reasons including but not limited to:

546.    In the event, any applicable statutes apply, Plaintiffs' claims must be tolled for the following reasons including but not limited to:

1) "During the pendency of a related lawsuit or arbitration related to the same defamatory statements" whereas, Defendant's defamatory posts and statements are at

in two other litigations and, "*the pendency of a motion to dismiss a related lawsuit may toll the statute of limitations until the motion is resolved*".

2) Threats from a licensed attorney in an attempt to prevent Plaintiffs from seeking recourse against her; such as Michael Humphries being a licensed attorney who threated Plaintiffs on innumerable occasions in 2017, leading Plaintiffs to believe they could not seek legal recourse against them or associated third-parties including the collusion between Maura Melcher and Michael Humphries.

3) A continuing wrong, whereas, Maura Melcher continues to perjure herself and commit fraud upon the Court.

And;

4) Plaintiffs recently discovered Maura Melcher's fraud during the pendency and discovery of litigation in Nevada in the years of 2022 and 2023 which they otherwise were never aware of as Maura Melcher concealed such fraud on the Court including perjured testimony, withheld police reports, lies to law enforcement and intentional misrepresentations to the Court.

547.      Defendant's actions were a direct and proximate cause of harm against Plaintiffs.

548.      Plaintiffs have *actual knowledge* that **substantial** additional evidentiary support, which is in the exclusive possession of Defendants, (which is not privileged), and other third parties including but not limited to non-parties, Defendant's agents and other third- parties, which will exist for the allegations and claims set forth above after a reasonable opportunity for discovery.

549.     Defendant acted intentionally and/or recklessly whereas, the Defendant's

conduct was extreme and outrageous and was the direct cause of Plaintiff's severe

emotional distress in which Plaintiffs continue to suffer today.

550.     Defendant is equitably estopped from asserting a statute of limitations as a

defense and allowing her to do so would be **unjust.**

551.     Plaintiffs' statutes, if any, must be tolled.

552.     WHEREFORE, Plaintiffs Dusty and Taylor Button demand judgment against

Defendant for damages, punitive damages, court costs, and such other relief as the

Court deems just and proper.

## COUNT V – TORTIOUS INTERFERENCE WITH BUSINESS RELATIONS
### (*Plaintiffs against Maura Melcher*)

553.     Plaintiffs repeat, reallege and incorporate each and every allegation contained

above as though fully set forth herein.

554.     Plaintiffs were an established brand in and of themselves who did business

nationally and internationally, providing services to employers, sponsors, agencies and

various other third parties, and had developed an excellent reputation in the dance and

automotive industries.

555.     Since August 14th, 2017, Plaintiffs have worked for various employers

including but not limited to SEMA as well as other entities which are either affiliated

with, associated with, or under the control or ownership of the same principals who

own and control SEMA.

556.     Since August 14th, 2017, Plaintiffs have worked for various employers

including but not limited to entities which are either affiliated with, associated with, or

under the control or ownership of the same principals who own and control the Instagram account @formuladerp.

557.    Since August 14th, 2017, Plaintiffs have worked for various employers including but not limited to TOYO Tires as well as other entities which are either affiliated with, associated with, or under the control or ownership of the same principals who own and control TOYO Tires.

558.    Since August 14th, 2017, Plaintiffs have worked for various employers including but not limited to individual entities identified as private third-party individuals within their respective industries as well as other entities which are either affiliated with, associated with, or under the control or ownership of the same principals who own and control those private third-party individuals which employed or otherwise contracted Plaintiffs for one-time events and/or individual jobs.

559.    Upon information and belief, Plaintiff Taylor Button was referred to SEMA because, in part, of his excellent reputation. Due to the continuing and developing relationship with SEMA and affiliated entities, Taylor Button had developed business which generated revenue for services provided; Maura Melcher's fraud on the Court for over six years, caused these contracts to be terminated as she secured abuse prevention orders for her client who perjured herself, lied to law enforcement and withheld those reports from the Court whereas; Maura Melcher, in some cases, aided in those perjured statements, lies to law enforcement and withholding of evidence which was later mailed to employers and contractors of Plaintiffs.

560.    Upon information and belief, Plaintiff Taylor Button was referred to affiliates of @formuladerp because, in part, of his excellent reputation. Due to the continuing

and developing relationship with affiliated entities of @formuladerp, Taylor Button had developed business which generated revenue for services provided.; Maura Melcher's fraud on the Court for over six years, caused these contracts to be terminated as she secured abuse prevention orders for her client who perjured herself, lied to law enforcement and withheld those reports from the Court whereas; Maura Melcher, in some cases, aided in those perjured statements, lies to law enforcement and withholding of evidence which was later mailed to employers and contractors of Plaintiffs.

561.     Upon information and belief, Plaintiff Taylor Button was referred to TOYO Tires because, in part, of his excellent reputation. Due to the continuing and developing relationship with TOYO Tires and affiliated entities, Taylor Button had developed business which generated revenue for services provided; Maura Melcher's fraud on the Court for over six years, caused these contracts to be terminated as she secured abuse prevention orders for her client who perjured herself, lied to law enforcement and withheld those reports from the Court whereas; Maura Melcher, in some cases, aided in those perjured statements, lies to law enforcement and withholding of evidence which was later mailed to employers and contractors of Plaintiffs.

562.     Upon information and belief, Plaintiffs were referred to individual private third- parties because, in part, of their excellent reputation. Due to the continuing and developing relationship with innumerable individual private third-parties and affiliated entities, Plaintiffs had developed business which generated revenue for services provided; Maura Melcher's fraud on the Court for over six years, caused these

contracts to be terminated as she secured abuse prevention orders for her client who

perjured herself, lied to law enforcement and withheld those reports from the Court

whereas; Maura Melcher, in some cases, aided in those perjured statements, lies to law

enforcement and withholding of evidence which was later mailed to employers and

contractors of Plaintiffs.

563.     At some point, (and at different times) in 2021, SEMA, affiliates of

@formuladerp, TOYO Tires and innumerable private third-party individuals, (among

other sponsors and/or employers), became hesitant and or reluctant to use Plaintiffs'

services due to the forementioned fraud committed by Sage Humphries, her parents

and Jane Doe 1, attributed to the fraud on the Court by Maura Melcher.

564.     At or about this same time, the forementioned companies revealed that their

hesitancy to work with Plaintiffs stemmed from the egregious and heinous, false

allegations stated by Sage Humphries, her parents, Jane Doe 1 and Maura Melcher,

who represented them.

565.     The forementioned companies and the related entities terminated their

relationships with Plaintiffs as a direct cause of Defendant's actions and misconduct

including by aiding her clients' fraud.

566.     Defendant acted intentionally and maliciously in interfering with Plaintiffs'

relationships with the forementioned companies and its affiliates.

567.     The foregoing actions on the part of Defendants constitute an unlawful

interference with contractual relations between the forementioned companies:

(A) there was a contractual relationship between Plaintiffs and the forementioned

companies.

(B) Defendant clearly knew of the Plaintiffs' contractual relationships with the forementioned companies.

(C) The Defendant wrongfully interfered with Plaintiffs contractual relations;

(D) The Defendant's interference is the reason for the loss of Plaintiffs' contractual relationship with the forementioned companies; and

(E) as a result of Defendant's actions, Plaintiffs have been severely and irreparably damaged.

568.     The Defendant allowed Jane Doe 1, Sage Humphries and her parents to commit fraud, and in some cases encouraged them and aided them in committing the fraud on the Court by committing fraud on the Court herself; resulting in defamatory statements, fraudulently granted abuse prevention orders and frivolous lawsuits which terminated the forementioned relationships.

569.     Upon belief, Defendant also personally aided Jane Doe 1 in contributing to the termination Dusty Button's contract with the Boston Ballet, in conspiracy with Sage Humphries and her parents.

570.     Upon belief, Defendant interfered in Plaintiffs' business relations by way of participating in sending the abuse prevention orders to various third-party employers, contractors and/or affiliates of the Plaintiffs in 2017 and 2018 and including sending the lawsuit and false allegations by Jane Doe 1 and Sage Humphries to various third-parties, contractors, employers and/or affiliates of the Plaintiffs resulting in the termination of contractual agreements with Plaintiffs.

571.     Accordingly, any statute of limitations applicable to Dusty and Taylor's claims, if any, is tolled.

572.    Defendant's actions described above deprived Dusty and Taylor of the opportunity to commence this lawsuit before now.

573.    Defendant is equitably estopped from asserting a statute of limitations defense as to Plaintiffs' claims.

574.    Allowing Defendants to do so would be **unjust.**

575.    Plaintiffs were not aware of Defendant's fraud, misconduct or unethical actions prior to at least 2022 until the discovery process in the Nevada litigation progressed whereas, Plaintiffs received and subpoenaed discovery proving the forementioned statements to be true, including deposition testimony from Sage Humphries and Jane Doe 1.

576.    WHEREFORE, Plaintiffs Dusty and Taylor Button demand judgment against Defendants for damages, punitive damages, court costs, and such other relief as the Court deems just and proper.

## COUNT VI – FRAUD ON THE COURT
### (*Against Maura Melcher*)

577.    Maura Melcher committed fraud on the Court in 2017, 2018 and again in 2023 whereas there was:

(1) Material misrepresentations, as she intentionally made *innumerable false statements* of fact or law that were relied upon by the Court and law enforcement; and those misrepresentations were **essential to the outcome** of the case, (for example), falsely stating that her client, (Sage Humphries), was "underage" at the time of her relationship with Plaintiffs, that the Plaintiffs "fed her drugs", that the Plaintiffs "stalked" her client, that her client was "seventeen" at the time of her relationship with Plaintiffs, that the Plaintiffs were "in their thirties" when her

client was "underage", and that Plaintiffs were "shooting firearms" in their
apartment after having documented material evidence that Plaintiffs never owned
firearms and that Plaintiffs were never "shooting firearms" in their apartment.

(2) Intent to deceive: Maura Melcher intended to, and did, deceive or mislead the
Court, acting with reckless disregard for the truth by intentionally making false
statements and misrepresentations to the Court to secure abuse prevention orders
knowing her client was never abused by the Plaintiffs and while possessing
evidence which proved that to be true, (including for all the forementioned
reasons).

(3) Reliance: The Boston Municipal Court relied on the attorney's misrepresentation
to their detriment.

(4) Causation: Maura Melcher's fraud caused severe harm and damage to the
Plaintiffs which interfered with Court's proceedings in three separate years of
2017, 2018 and 2023 and later allowed the abuse prevention orders which were
granted because of the fraud on the Court, were used as the catalyst in a separate
litigation in a separate forum and resulted in Plaintiffs' complete and total loss of
employment and income.

(5) Actual damages: Plaintiffs suffered actual economic and non-economic losses as a
result of Maura Melcher's fraud on the Court, later used as the catalyst for Sage
Humphries' to file a frivolous lawsuit against the Plaintiffs, to defame them in the
media using those abuse prevention orders, to terminate contracts using those
abuse prevention orders and further, Maura Melcher aided Jane Doe 1, (a woman
Plaintiffs have never in their life, met before), in filing a frivolous lawsuit against

Plaintiffs in Nevada based on allegations which mimic Sage Humphries' affidavit from 2017.

578.     Accordingly, any statute of limitations applicable to Dusty and Taylor's claims, if any, is tolled.

579.     Defendants' actions described above deprived Dusty and Taylor of the opportunity to commence this lawsuit before now.

580.     Defendants are equitably estopped from asserting a statute of limitations defense as to Plaintiffs' claims.

581.     Allowing Defendants to do so would be unjust.

582.     Plaintiffs were not aware of Defendants' actions prior to 2021 until the discovery process in the Nevada litigation began whereas, Plaintiffs received discovery proving the forementioned statements to be true in and around the end of the year 2022 and in 2023 including deposition testimony from Jane Doe 1 and Sage Humphries.

583.     WHEREFORE, Plaintiffs Dusty and Taylor Button demand judgment against Defendants for damages, punitive damages, court costs, and such other relief as the Court deems just and proper.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs respectfully request judgment against Defendant Maura Melcher, awarding compensatory, consequential, exemplary, and punitive damages in an amount to be determined at trial, including but not limited to:

A. Entering judgment against the Defendants on all claims made against them in this Complaint;

COMPLAINT AND DEMAND FOR JURY TRIAL

B.  Entering an Order directing that Defendants pay Plaintiffs reasonable fees and costs pursuant to any applicable law;

C.  For actual damages in an amount to be proven at trial;

D.  For punitive damages in an amount to be proven at trial;

E.  For costs of suit;

F.  For pre-judgment and post-judgment interest on the foregoing sums;

G.  For such other and further relief as the Court deems proper.

Respectfully Dated this 5th day of October 2024,

/s/

Dusty Button and Mitchell Taylor Button (*Pro se*)

101 Ocean Sands Court
Myrtle Beach, SC 29579
Worldofdusty@gmail.com
310-499--8930

120
COMPLAINT AND DEMAND FOR JURY TRIAL

**CERTIFICATE OF SERVICE**

Plaintiffs hereby certify that they mailed this complaint to the Clerk's Office at

1 Courthouse Way, Boston, MA 02210 on October 7th, 2024.

Dated this 5th day of October, 2024,

/s/ _____

Signature of Plaintiff Dusty Button (*Pro se*)

/s/ _____

Signature of Plaintiff Mitchell Taylor Button (*Pro se*)

COMPLAINT AND DEMAND FOR JURY TRIAL