UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

Dusty Button and Mitchell Taylor Button,

Plaintiffs,

v.

Maura Melcher,

Defendant.

C.A. NO. 1:24-cv-12632-WGY

**DEFENDANT'S MEMORANDUM OF LAW IN SUPPORT OF HER MOTION TO DISMISS FIRST AMENDED COMPLAINT**

## I. INTRODUCTION

Through their First Amended Complaint ("FAC"), Plaintiffs Dusty Button and Mitchell Taylor Button ("Plaintiffs") assert claims for intentional interference with contractual and advantageous relations, defamation, and intentional infliction of emotional distress ("IIED"). Pursuant to Fed. R. Civ. P. 12(b)(6), Defendant Maura Melcher ("Melcher" or "Defendant") moves to dismiss Plaintiffs' claims as the claims are time-barred, the statements or conduct upon which the claims rest are absolutely privileged, and each count has been insufficiently pled.

## II. PROCEDURAL BACKGROUND

On October 11, 2024, Plaintiffs filed the instant complaint. *D. 1.* On March 24, 2025, this Court dismissed the Complaint, finding that all of "Melcher's alleged misconduct – both in and outside the courtroom – occurred 'during litigation process' of seeking, obtaining, defending, and enforcing a restraining order against Plaintiffs." *D. 10, p. 2.* Plaintiffs appealed the dismissal. On December 16, 2025, the First Circuit Court of Appeals largely upheld the dismissal. *D. 22.*

The First Circuit Court of Appeals held that Plaintiffs had "not demonstrated that the litigation privilege does not bar their claims and allegations that related to the judicial proceedings before the Boston Municipal Court or the United States District Court of Nevada[1]." *D. 22, p. 1.* The First Circuit Court of Appeals further noted that the complaint contained allegations that "appear unrelated to the judicial proceedings," but that the allegations that potentially were "not barred by the litigation privilege were insufficient to state a claim." *D. 22, p. 2.* The First Circuit Court of Appeals then remanded the matter to permit Plaintiffs an opportunity to amend their complaint since "it is not 'crystal clear' on the face of the complaint that amendment would be futile". *Id.*

On February 5, 2026, Plaintiffs filed their FAC. *D. 27.* Therein, Plaintiffs allege, with few facts, conduct and communications by Melcher that were not "required by any court order[, ] were not judicial" and were based upon a "contested narrative[.]" *D. 27, ¶3.* Plaintiffs further note that their FAC "is based solely on" Melcher's communications with non-judicial third parties, transmission of abuse prevention orders beyond enforcement necessity, encouragement or facilitation of informal and online dissemination, and continuation of such conduct after discovery revealed material factual disputes.[2]" *D. 27, ¶48.*

## III. <u>ALLEGATIONS IN COMPLAINT</u>

Plaintiffs allege the following in their FAC: Prior to 2017, Plaintiffs were professionally active and employable. *D. 27, ¶7.* In 2017 and 2018, abuse prevention orders were issued against

---

[1] Melcher's former client, along with others, brought a complaint against Plaintiffs in the United States District Court, District of Nevada, 2:21-CV-01412-ART-EJY (the "Nevada Action").

[2] Melcher presumes the undefined "factual disputes" and "contested narrative" relate to hearings in the Boston Municipal Court. If so, Plaintiffs cannot litigate claims related to the factual disputes here. *Callaghan v Shirazi,* 215 F.3d 1312, *1 (1st Cir. 2000). Here, as there, Plaintiffs' FAC "simply seems to be an indirect way of again saying that the state court's decisions [in entering the protective orders was] wrong." *Id.* Moreover, as stated by the First Circuit Court of Appeals, fraud on the court cannot be used to challenge conduct before a different court. *D. 22, p. 2,* citing *King v. Fields,* 790 F.Supp.3d 32, 35 n 1.

Plaintiffs in Massachusetts. *D. 27, ¶¶3, 10*. In these proceedings, Melcher, an experienced attorney, represented the petitioner. *D. 27, ¶¶10, 14.*

After the abuse prevention orders were issued, Melcher communicated with others including the Boston Ballet. *D. 27, ¶¶27, 39, 54*. Melcher transmitted or caused to be transmitted copies or summaries of the abuse prevention order to third parties. *D. 27, ¶19*. Following the transmissions, Plaintiffs experienced refusals to engage, termination of relationships and unexplained professional exclusion. *D. 27, ¶22.* By July 2021, Plaintiffs had lost all professional work and income. *D. 27, ¶32.*

Plaintiffs further allege that the wrongful conduct included "(a) direct communications with professional institutions; (b) the transmission or referencing of abuse-prevention orders and related materials in professional contexts unrelated to enforcement; and (c) dissemination through intermediaries and informal networks designed to reach decision-makers while limiting traceability." *D. 27, ¶¶23, 55, 80.*

Plaintiffs had "existing and perspective contractual and advantageous relationships with professional institutions, employers, collaborators and industry gatekeepers, including institutions in which plaintiffs had previously worked or sought continued engagement." *D. 27, ¶52.* Plaintiffs allege that Melcher knew of these relationships. *D. 27, ¶53.* Plaintiffs allege that Melcher "acting outside any judicial proceeding published, republished or caused to be published statements concerning Plaintiffs to third parties." *D. 27, ¶69.* The publications included transmission or referencing of abuse prevention orders and related materials, including references to a police report. *D. 27, ¶74.*

## IV. <u>STANDARD OF REVIEW</u>

In ruling on a F. R. Civ. P. 12(b)(6) motion, the trial court must "accept as true the well-pleaded factual allegations of the complaint, draw all reasonable inferences therefrom in the Plaintiffs' favor and determine whether the complaint, so read, sets forth facts sufficient to justify recovery on any cognizable theory." *Martin v. Applied Cellular Tech.*, 284 F.3d 1, 6 (1st Cir.2002). A motion to dismiss for failure to state a claim upon which relief may be granted is proper when a complaint fails to allege "a plausible entitlement of relief." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 550 (2007). The allegations in the complaint must "possess enough heft to 'sho[w]' that the pleader is entitled to relief." *Id*.

> Determining whether a complaint states a plausible claim for relief, will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense. But where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged – but it has not "show[n]" – that the pleader is entitled to relief.

*Ashcroft v. Iqbal*, 129 S.Ct. 1937, 1950 (2009) (internal citations omitted).

The court need not accept as true "bald assertions" or conclusions of law. *Resolution Trust Corp. V. Driscoll*, 985 F.2d 44, 48 (1st Cir.1993) "'A pleading that offers labels and conclusions' or a formulaic recitation of the elements of a cause of action will not do.'" *Ashcroft V. Iqbal*, 556 U.S. 662, citing *Bell Atlantic Corp. V. Twombly*, 550 U.S. 544, 555 (2007). The motion should be granted when the complaint, so read, fails to set forth facts sufficient to justify recovery on any cognizable theory. *TAB/ICIB Services, Inc. v. Pan American Grain Co., Inc.*, 215 F.3d 172, 175 (1st Cir. 2000). Affirmative defenses can be raised in a motion to dismiss if "facts establishing the defense [are] . . . clear on the face of the Plaintiffs' pleadings" (internal quotations omitted). *Aldahonda-Rivera v. Parke Davis & Co.*, 882 F.2d 590, 591 (1st Cir.1989).

A federal court sitting in diversity jurisdiction is constrained to apply state substantive law. *Shay v. Walters*, 702 F.3d 76, 79 (1st Cir. 2012) citing *R.R. Co. v. Tompkins*, 304 U.S. 64, 78 (1938). Here, that law is the law of Massachusetts.

## V. ARGUMENT

### A. PLAINTIFFS' FIRST AMENDED COMPLAINT IS TIME-BARRED

#### 1. The Alleged Conduct Upon Which Plaintiffs' Complaint Rests Occurred More than Five Years Before Plaintiffs Filed Their Complaint

The statute of limitations on all three claims is three years. M.G.L. c. 260, §§ 2A, 4. Plaintiffs filed the instant complaint on October 11, 2024. In the instant FAC, Plaintiffs allege conduct by Melcher occurring in 2017 and 2018. *D. 27,* ¶¶*3, 10.* Their Complaint, filed more than five years later, is time-barred, and should be dismissed.

#### 2. The Discovery Rule does not save Plaintiffs' Time-Barred claims.

Should Plaintiffs argue the statute of limitations was tolled by operation of the discovery rule, such an argument would be unavailing. "Under the discovery rule, a statute of limitations is tolled and will not begin to run until the plaintiff discovers or with reasonable diligence should have discovered that (1) [they] suffered harm; (2) [their] harm was caused by the conduct of another; and (3) the defendant is the person who caused that harm. Massachusetts law recognizes this rule to avoid unfairness that may arise where a statute of limitations has run even before a plaintiff knows of his injury. Because the discovery rule considers not only when the plaintiff has in fact discovered but also what [they] should have discovered, it will not apply if the plaintiff reasonably should have known of the alleged harm." *Davalos v. Baywaych Inc.*, 752 F.Supp.3d 416, 420-421 (2024) (underlining in original; internal citations and quotations omitted). Plaintiffs bear the burden of proving facts that take their case outside the three-year statute of limitations. *Id*.

Plaintiffs' FAC and original Complaint demonstrate that as a matter of law, Plaintiffs knew *or should have known* of their supposed claims before the expiration of the statute of limitations on (at the latest) December 31, 2021 (three years after the allegation of conduct in 2018) or July of 2024 (three years after Plaintiffs purportedly became permanently unemployed). However, Plaintiffs claim they did not discover any supposed claims until 2021 during discovery of litigation in another matter (presumably the Nevada Action). *D. 27, ¶¶25, 57*. In their original Complaint, they alleged that on July 28, 2021, Melcher's former client filed a complaint against them, and the New York Times reported the filing on the front page. *D.1, ¶¶278, 280*. On May 22, 2017 (more than *seven* years before the instance complaint was filed), Dusty Button's contract with the Boston Ballet was "abruptly and prematurely terminated for 'just cause', [ ] banning Dusty and Taylor from the premises of the Boston Ballet and Boston Opera House." *D.1, ¶91*. The petitioner in the protection order matter, Melcher's then client, was also employed at the Boston Ballet[3]. *D.1, ¶43*. Plaintiffs contend that Melcher's client, her client's parents or Melcher filed false police reports in 2017, to include a report of a sexual assault, and withheld the reports. *D.1, ¶¶164, 167, 168, 169*. Plaintiffs were aware of a report, as a report was discussed during a 2017 hearing in the Boston Municipal Court. *D.1, ¶¶168, 169*. Plaintiffs did not obtain a police report from the Orange County Sheriff's Department until they subpoenaed it in 2023. *D.1, ¶167*. Plaintiffs allege in their FAC that they had "lost all professional work and income" by July of 2021 and that they have not worked since July 2021. *D. 27, ¶¶32-33*.

"Where injury is present but not discernable, or an injury is recognized but its cause is not ascertainable, accrual of the cause of action is held to be in abeyance until the time when a

[3] While not alleged in either complaint, the protection order that issued referenced that Plaintiffs were to stay away from an address owned by the Boston Ballet, as this was the petitioner's place of employment. Melcher, on behalf of her then client, notified the security department of the Boston Ballet of the in-place protective order.

modicum of knowledge supplants ignorance in the mind of the claimant, or may be reasonably imputed to her. [citations omitted]" *Lijoi v. Massachusetts Bay Transportation Authority*, 28 Mass. App. Ct. 926, 928 (1990). There, plaintiff sued for loss of consortium related to an injury to her husband that had occurred 13 years earlier. She claimed to be unaware that the seizures were related to this 13-year-old assault. The Court of Appeals disagreed.

Here, Plaintiffs clearly had a "modicum of knowledge" in that they knew that a protective order had been issued against them, that Melcher represented the person who sought and obtained the order, that reports were made to law enforcement, that Plaintiffs were banned from the Boston Ballet as of May 22, 2017, and that the orders had been obtained despite a "contested narrative." *D. 27, ¶3*.

Plaintiffs contend that they later obtained police reports in 2023 during discovery in the Nevada Action. This does not assist them, since they were aware of the reports since 2017, as they were discussed during a hearing in the Boston Municipal Court, and nothing precluded Plaintiffs from obtaining the reports, such that they could have discovered the information. Thus, Plaintiffs, as a matter of law, cannot demonstrate that they did not know or could not have discovered their cause of actions before the statute of limitation expired on at the latest December 31, 2021 (three years after the end of 2018). See also, *Bowen v. Eli Lilly & Co., Inc.*, 408. Mass 204, 206 (1990) ("We do not require that a plaintiff have notice of a breach of a duty before a cause of action may accrue, but we do require that a plaintiff have (1) knowledge or sufficient notice that [they] were harmed and (2) knowledge or sufficient notice of what the cause of the harm was.")

Consequently, Plaintiffs were not ignorant of their supposed causes of action and the causes of action were not inherently unknowable. Plaintiffs' FAC is time-barred and should be dismissed.

**B. MELCHERS' STATEMENTS ARE PRIVILEGED**

Plaintiffs, evidently seeking to comport their FAC to the First Court of Appeals' decision, state that their FAC "is based solely on" Melcher's communications with non-judicial third parties. *D. 27, ¶48*. Other than references to the Boston Ballet, Plaintiffs' FAC does not identify a single "non-judicial third party."

The absolute litigation privilege "shields an attorney from civil liability to nonclients for statements made in the course of litigation." *Bartle v. Berry*, 80 Mass. App. Ct. 372, 378 (2011). The statements are privileged "if made by an attorney engaged in his function as an attorney whether in the institution or conduct of litigation or in conferences and other communications preliminary to litigation." *Id*. Plaintiffs here base their claims on the distribution of the lawfully entered protective order and related materials, arguing that they were obtained based upon a "contested narrative." They seek to litigate the consequences of that order by claiming that acts taken by Melcher during the course of her representation of her then client were "non-judicial." *D. 27, ¶48.* Their FAC, though, wholly fails to allege any fact from which it may be inferred that Melcher made any communication or engaged in any conduct that was not related to the petitioning for, and obtaining and enforcement of, the protective orders. Plaintiffs' label of unspecific communications as "non-judicial" is insufficient to avoid the litigation privilege.

"[I]t is well established that '[t]he privilege applies not only to defamation claims brought against [an] attorney, but to civil liability generally.'" *Bassichis v. Flores*, 490 Mass. 143, 151 (2022) (quoting *Bartle* at 378). "The privilege applies regardless of malice, bad faith, or any nefarious motives on the part of the lawyer so long as the conduct complained of has some relation to the litigation." *Bassichis* at 150 (holding that litigation privilege applied to tortious conduct taken by counsel, including fraudulent misrepresentation). "In addition to fostering freedom of

expression, the litigation privilege furthers the efficient administration of justice by preventing frivolous actions brought by disgruntled individuals in the wake of unfavorable judgments." *Bassichis* at 152.

Melcher represented the petitioner in an abuse-protection matter. An order issued. Both Dusty Button and Melcher's then client were employed at the Boston Ballet[4]. *D. 1, ¶43, D. 27, ¶39 and 54.* Melcher, naturally, in furtherance of her representation, communicated with her client's employer about the existence of the order. If a statement or conduct is encompassed by the litigation privilege—as it is here—immunity is absolute. *Bartle* at 378; *Bassichis,* at 151. The purpose of the litigation privilege is to "permit[ ] attorneys complete freedom of expression and candor in communications in their efforts to secure justice for their clients." *Barnes v. Johnston-Neeser*, 101 Mass. App. Ct. 1115, *4 (2022) (*Rule 23.0 decision*) (citations omitted). Stripping away the labels and conclusions, Plaintiffs have alleged no communication or conduct which is outside of the litigation privilege. Plaintiffs' FAC should be dismissed.

## C. FOR THE REASONS ABOVE AND AS OUTLINED BELOW, EACH COUNT ALLEGED BY PLAINTIFFS FAIL TO STATE A CAUSE OF ACTION UPON WHICH RELIEF MAY BE GRANTED

### 1. <u>Count I Intentional Interference with Contractual and Advantageous Relations</u>

In order to prevail on a tortious interference claim, Plaintiffs must establish: "(1)[they] had an advantageous relationship with a third party (e.g., a present or prospective contract or employment relationship; (2) the defendant knowingly induced a breaking of the relationship; (3) the defendant's interference with the relationship, in addition to being intentional, was improper in motive or means; and (4) the [plaintiffs' where harmed] by the defendant's actions." *Dobelle v.*

[4] Again, as noted above, the protective order specifically referenced the Boston Ballet and an address owned by the Boston Ballet, since it was where the petitioner was working at the time the order was issued.

*Flynn*, 12 F.Supp.3d 274, 296 (2014); see also *Adcom Prod., Inc. v. Konica Bus. Machines USA, Inc.*, 41 Mass. App. Ct. 101, 104 (1996). Plaintiffs must allege and prove that they suffered "damages as a consequence of the defendant's conduct, and those damages cannot be speculative or conjectural losses." *Chemawa Country Golf, Inc. v. Wnuk*, 9 Mass. App. Ct. 506, 510 (1980), citing *H. D. Watts Co. v. American Bond & Mortgage Co.*, 260 Mass. 599, 613-614 (1927). Here, as in *Dobelle,* Plaintiffs' claims fail at the second and third prongs. *Dobelle* at 296.

Plaintiffs allege that Melcher knew of relationships with existing and prospective contractual and advantageous relationships but provide no fact upon which this allegation rests. *D. 27, ¶¶52-53.* While Plaintiffs further allege that Melcher communicated with third parties after the issuance of the abuse-prevention orders, to include with representatives of the Boston Ballet, referencing allegations against Plaintiffs and the existence of the orders and/or showing "police-report materials to third parties," this conduct was privileged, as stated above. *D. 27, ¶¶54-56.* Aside from alleging communications with the Boston Ballet, Plaintiffs provide no facts but merely recite the elements of the cause of action along with conclusory statements. The FAC does not allege sufficient non-privileged facts from which one may infer that Melcher "knowingly induced a breaking" of any particular relationship. Plaintiffs have not identified any supposed third party nor any fact from which it may be inferred that Melcher knowingly induced a break.

Next, to demonstrate "improper means, a plaintiff must prove improper conduct beyond the fact of the interference itself" and "improper motive, alone, is not actionable." *Bartle* at 380-381. It is an "essential element" that a defendant act "without lawful cause." *Conway v. Smerling*, 37 Mass. App. Ct. 1, 7 (1994). Plaintiffs allege that Melcher used "improper means because [the communications] involved the extrajudicial use of judicial and law-enforcement materials to influence third-party employment and institutional decisions." *D. 27, ¶59.* Plaintiffs evidently

contend that simply supplying the in-place protective order and "law-enforcement materials" to others supports an inference of an improper means and motive. However, it merely shows, at best, the "interference itself," which is insufficient, and their "allegation is conclusory and holds no additional weight in the context of" [the claim. ] Nor are there sufficient allegations that the interference, if there was any, was due to any improper motive." *Dobelle* at 297.

Plaintiffs have failed to establish an entitlement to relief upon a theory of tortious interference with advantageous relations. Count I should be dismissed.

### 2. <u>Counts II Defamation</u>

Plaintiffs have failed to establish any factual basis in the FAC to support their claim of defamation. Indeed, the FAC does not identify *any* statement or communication by Melcher upon which their claim rests. "To survive a Rule 12(b)(6) motion to dismiss, the plaintiff[s] must allege facts sufficient to establish that the defendant[] made (1) a false and defamatory communication (2) of and concerning, the plaintiff[s] which is (3) published or shown to a third party." *Dobelle* at 293, quoting *Greenspan v. Random House, Inc*. 859 F.Supp.2d 206, 221 (D. Mass. 2012); *Carmack v. National R.R. Passenger Corp*, 486 F.Supp.2d 58 (D.Mass 2007). Plaintiffs' FAC fails to meet this burden. Plaintiffs allege that Melcher "acting outside any judicial proceeding published, republished or caused to be published statements concerning Plaintiffs to third parties." *D. 27, ¶69.* The publications included transmission or referencing of abuse prevention orders and related materials, including referencing a police report. *D. 27, ¶74.* This is insufficient.

The first element of a defamation claim requires a plaintiff establish a false and defamatory communication. Nowhere in Plaintiffs' FAC do they state any specific words spoken or written by Melcher, but rather generally say she made statements "concerning Plaintiffs" to others. Plaintiffs also allege no facts from which it can be inferred that Melcher made any *false* statements.

Her supposed transmission or reference to the abuse prevention orders and related materials also are insufficient to establish a claim for defamation. Without any specific facts to provide the basis for the defamation claim, Plaintiffs have failed to sufficiently allege a cause of action for defamation. While Plaintiffs provide broad and conclusory allegations about the transmittal of materials to unidentified third-parties, Plaintiffs do not identify a single false statement – or any statement - made by Melcher upon which their claim rests. Counts II should be dismissed.

### 3. <u>Count III Intentional Infliction of Emotional Distress</u>

Plaintiffs' FAC also fails to state a claim for IIED as a matter of law. Plaintiffs again allege in their IIED count that Melcher communicated allegations against Plaintiffs to employers, professional institutions and other third-parties, transmitted or referenced the abuse-prevention orders and related materials to third parties, encouraged or facilitated informal and online dissemination of allegations "through intermediaries" and that there is a "factual dispute concerning the allegations." *D. 27, ¶80.* They further allege that the conduct was "calculated to ensure Plaintiffs' permanent professional exclusion". *D. 27, ¶83.* Plaintiffs then claim "severe emotional distress" related to the "extrajudicial conduct." *D. 27, ¶86.*

To sustain a claim of IIED, plaintiff must show: (1) that defendant intended to cause or should have known that its conduct would cause plaintiff emotional distress; (2) that its conduct was extreme and outrageous; (3) that its conduct caused plaintiff's distress; and (4) plaintiff suffered severe distress of a nature that no reasonable person could be expected to endure. *Agis v. Howard Johnson Co.*, 371 Mass. 140, 144-45 (1976); *Polay v. McMahon*, 468 Mass. 379, 385 (2014). It is not enough that a defendant acted with an intent that is tortious or even criminal, or that he intended to inflict emotional distress, or even that his conduct is characterized by malice or a degree of aggravation which would entitle the plaintiff to punitive damages for another tort.

*Tetrault v. Mahoney, Hawkes & Goldings*, 452 Mass. 456, 466 (1997). To be considered "extreme and outrageous," the defendant's conduct must go beyond all possible bounds of decency and be utterly intolerable in a civilized community. See *Sena v. Commonwealth*, 417 Mass. 250, 264 (1994); *Polay v. McMahon*, 468 Mass. 379, 385 (2014); *Foley v. Polaroid Corp.*, 400 Mass. 82, 99 (1987). The standard is "very high," with ordinary insults, indignities, or even intentional acts of ill-will not breaking the threshold. *Polay* at 385-386 (extreme and outrageous requires conduct beyond all possible bounds of decency and conduct that is regarded as atrocious and utterly intolerable in a civilized community). "A judge may grant a motion to dismiss where the conduct alleged in the complaint does not rise to this level." *Polay* at 386.

Such is the case here. Plaintiffs have failed to plead sufficient facts from which it may be inferred that Melcher's supposed conduct was extreme and outrageous or that Melcher intended to cause plaintiffs emotional distress. "'Outrageousness' is a word somewhat debased in current usage, but . . . it means, for example, a high order of reckless ruthlessness or deliberate malevolence [ ] that is intolerable." *Conway v. Smerling*, 37 Mass. App. Ct. 1, 8 (1994).

In *Polay*, the plaintiff brought an IIED claim against his neighbor, alleging that the defendant had harassed him and his family by installing a video surveillance system aimed at their property, filing unfounded complaints with police, and engaging in a sustained pattern of hostility. *Polay v. McMahon*, 468 Mass. 379, 380-381 (2014). The plaintiff claimed that the defendant's conduct caused his family fear and anxiety and created emotional distress. *Id* at 381. The Supreme Judicial Court held that the conduct–including continual recording and surveillance of the plaintiffs with a video camera–was not sufficiently outrageous or extreme to support an IIED claim. *See Polay* at 387 (finding that the defendant's actions may support the plaintiff's invasion of privacy claim but did not satisfy the high bar of an IIED claim).

Notably, a defendant's conduct in filing a false police report and harassment prevention petitions were not considered, as the conduct must be "without privilege." *Polay* at 386 citing *Agis* at 144 and *Robert L. Sullivan, D.D.S., P.C. v. Birmingham*, 11 Mass. App Ct 359, 367 (1981). Thus, liability cannot be predicated on any alleged false police reports and protection order proceedings as such conduct is privileged. *Id.*

Here, Plaintiffs allege that Melcher transmitted information about Plaintiffs to include allegations against them and the protective orders. This conduct, even if personally upsetting, fails to allege underlying facts sufficient to plausibly suggest that Melcher's conduct was so extreme and outrageous as to "go beyond all possible bounds of decency and be utterly intolerable in a civilized community." The FAC contains no factual allegations which remotely approach the extreme and outrageous conduct necessary to support a finding of IIED.

The FAC also alleges in general terms that conduct by Melcher caused them emotional distress. *D. 27, ¶86.* The FAC allegations "do[ ] not constitute an allegation of fact but rather a recitation of the element of severe emotional distress. Such bare assertions do not suffice." *Polay* at 388 (internal quotations and citations omitted).

There is no plausible allegations of entitlement to relief, but rather, again, conclusory allegations and a recital of the elements. Thus, dismissal under Rule 12(b)(6) of Count III of Plaintiffs' FAC is warranted.

## V. <u>CONCLUSION</u>

For all the foregoing reasons, Maura Melcher respectfully requests that this Court:

A. Dismiss Plaintiffs' First Amended Complaint with prejudice; and

B. Grant such other and further relief as is equitable and just.

Respectfully submitted,

Maura Melcher

By Her Attorneys,

/s/ *Linda M. Smith*

Edwin F. Landers, Jr., BBO #559360
elanders@morrisonmahoney.com
Linda M. Smith, BBO #564597
lsmith@morrisonmahoney.com
MORRISON MAHONEY LLP
Center of New Hampshire Office Tower
650 Elm Street, Suite 201
Manchester, NH 03101
Phone: 603-622-3400
Fax: 603-622-3466

**CERTIFICATE OF SERVICE**

I hereby certify that this document filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and paper copies will be sent to those indicated as non-registered participants on August 26, 2026

*/s/ Linda M. Smith*
Linda M. Smith